No. 22322.

WOODROW PRICE WILLIAMS, JR. *v.* THE DISTRICT COURT
OF THE EIGHTH JUDICIAL DISTRICT IN AND FOR THE COUNTY
OF LARIMER, STATE OF COLORADO, AND THE HONORABLE
DALE E. SHANNON, A JUDGE THEREOF.
(417 P.2d 496)

Decided August 15, 1966.

Woodrow Price Williams, Jr., pro se.

Honorable Dale E. Shannon, pro se.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the court.

Woodrow Price Williams, Jr., a parolee from the Colorado state penitentiary, was recommitted for an alleged violation of the terms of his parole. Claiming that his privileges had been revoked contrary to law,

Williams petitioned the District Court in and for the County of Larimer for a writ of "Habeas Corpus ad Subjiciendum." Submitted with this petition was a verified "Motion for Leave to Proceed in Forma Pauperis."

The district court, ruling the petition for habeas corpus to be invalid on its face for the reason that venue had been improperly laid, dismissed the proceedings without prejudice and without ever ruling upon the motion to proceed in forma pauperis. The court then assessed costs of $21 against Williams, reasoning thus:

"With reference to Petitioner's 'Motion for Leave to Proceed in Forma Pauperis' the petition for habeas corpus on its face showing a lack of proper venue in this Court, it is and has been unnecessary for this Court to determine whether or not the Petitioner should be allowed to file his petition without pre-payment of court costs as a poor person, and the court costs are now taxed against the Petitioner."

After so assessing costs, the court in its order directed the warden of the Colorado state penitentiary to remit to the clerk of the court:

". . . the sum of $21.00 court costs out of funds of Petitioner, Woodrow Price Williams, Jr. and from any and all funds of said Petitioner in the custody of the Warden of the Colorado State Penitentiary as and when any sums are available from any funds for such payment."

Mr. Williams, pro se, sought relief from this court. We chose to treat the matter as an original proceeding to obtain an order to show cause. Rule to show cause then issued.

Answer has been made to this order and a brief in support of the court's action submitted. In the opinion of this court, cause has not been shown, and the trial court is instructed to vacate that portion of the "Order of Dismissal without Prejudice," entered June 24, 1965, as described above, relating to payment of costs, and to enter an order for the refund of all monies

remitted pursuant to it. We feel that the district court's refusal to rule on the motion to proceed in forma pauperis was violative of due process of law under the state and federal constitutions, which, in turn, had the effect of denying to Mr. Williams the equal protection of the laws guaranteed him by those constitutions.

## I.

Since the decision of the United States Supreme Court in *Griffin v. Illinois*, 351 U.S. 12, 76 Sup. Ct. 585, 100 L. Ed. 891, 55 A.L.R.2d 1055, the law has begun to square itself with the reality that court-imposed costs may effectively distort the even application of criminal justice in a manner that results constitutionally in the denial of equal protection of the laws to indigent defendants. The *Griffin* case established a rule that the indigent must be afforded access to established channels of appellate review in such a manner that he is freed from the "invidious discriminations" which attach when proceeding in penury. In its opinion, the Court stressed an analysis grounded in the due process and equal protection clauses of the federal constitution and held that, where a transcript was a necessity for effective and complete judicial review under Illinois procedure, the state was required to make some adequate provision to protect the interests of indigent appellants. With cold pith the Court remarked:

"There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts."

The argument advanced by the State of Illinois that there was no "invidious discrimination" because all persons, rich and poor, were faced with the same costs was expressly rejected by both the majority opinion (footnote #11) and Mr. Justice Frankfurter's concurring remarks. The latter Justice's observations are especially revealing in this regard.

". . . [W]hen a State deems it wise and just that convictions be susceptible to review by an appellate court, it cannot by force of its exactions draw a line which precludes convicted indigent persons, forsooth erroneously convicted, from securing such a review merely by disabling them from bringing to the notice of an appellate tribunal errors of the trial court which would upset the conviction were practical opportunity for review not foreclosed.

"To sanction such a ruthless consequence, inevitably resulting from a money hurdle erected by a State, would justify a latter-day Anatole France to add one more item to his ironic comments on the 'majestic equality' of the law. 'The law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread. . . .' "

Following *Griffin v. Illinois, supra,* the United States Supreme Court took occasion to elaborate upon its previously announced rule in *Burns v. Ohio,* 360 U.S. 252, 79 S. Ct. 1164, 3 L. Ed.2d 1209. The matter at issue in the latter case was whether a $20 docket fee assessed to all appellants, "the rich as well as the poor," was violative of the Constitution. Although not explicitly set out, it seems certain that the Court's reasoning again was bottomed on the equal protection clause. Said the Court:

"There is no rational basis for assuming that indigents' motions for leave to appeal will be less meritorious than those of other defendants. Indigents must, therefore, have the same opportunities to invoke the discretion of the Supreme Court of Ohio."

In *Douglas v. Green,* 363 U.S. 192, 80 S. Ct. 1048, 4 L. Ed.2d 1142, the Supreme Court expressly held that a prisoner's right to the equal protection of the laws was violated where no adequate appellate procedure free from the burden of docket costs was provided by the state. The case arose under the same procedures held deficient in *Burns* one year earlier. Challenge to

confinement was made by Douglas through petition for habeas corpus accompanied by a motion to proceed in forma pauperis. Leave to proceed in forma pauperis was denied by the federal district court on the ground that Douglas' petition was without merit. This dismissal was affirmed by the circuit court of appeals and the Supreme Court was then able to treat the denial of the motion as a denial of the petition for purposes of review.

The cases of *Smith v. Bennett* and *Marshall v. Bennett*, considered jointly at 365 U.S. 708, 81 S. Ct. 895, 6 L. Ed.2d 39 (referred to collectively hereinafter as *Smith v. Bennett*) were the Supreme Court's next major pronouncement in the line of cases here under consideration. In a unanimous decision the Court held the equal protection clause of the federal constitution to require states to allow indigent prisoners to petition for state habeas corpus without payment of statutory filing fees. The fee in question was a mere $4, but the Court, observing that to the indigent $4 might as well be $400, deliberately declared a broad holding when Mr. Justice Clark stated in his opening paragraph:

"We hold that to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws."

Both Smith and Marshall were confined felons in Iowa; both filed petitions for writs of habeas corpus along with motions for leave to proceed in forma pauperis; both were informed that their actions could not be docketed without prior payment of the $4 fee. Smith's action, challenging the revocation of his parole, was simply turned away by the clerk of the Iowa District Court; Marshall's petition, which challenged the information under which he was convicted, was not docketed after the court ruled in an unreported written order not only that the statutory fee had first to be paid, but also that the court had "nevertheless, examined the

petition and found it would have to be denied if properly presented to the Court."

One of the arguments put forward by the State of Iowa in *Smith v. Bennett, supra,* was that habeas corpus was a *collateral civil* remedy and, because of this, the cases of *Griffin v. Illinois, supra,* and *Burns v. Ohio, supra,* were not controlling, for in those cases there was a *direct* attack from and in the form of a *criminal* proceeding. The contention was dealt with and rejected by the Court:

"While habeas corpus may, of course, be found to be a civil action for procedural purposes . . . it does not follow that its availability in testing the State's right to detain any indigent prisoner may be subject to the payment of a filing fee. . . . We shall not quibble as to whether in this context it be called a civil or criminal action. . . . Over the centuries it has been the common law world's 'freedom writ' by whose orderly processes the production of a prisoner in court may be required and the legality of the grounds for his incarceration inquired into, failing which the prisoner is set free. We repeat what has been so truly said of the federal writ: 'there is no higher duty than to maintain it unimpaired . . .' and unsuspended save only in the cases specified in our Constitution. When an equivalent right is granted by a State, financial hurdles must not be permitted to condition its exercise."

With this review of the federal cases in mind, we turn to an appraisal of the actions here at issue, *i.e.,* was it proper for the trial court to dismiss the petition for habeas corpus and refuse to rule upon the motion to proceed in forma pauperis so that a $21 docket fee was taxed against the petitioner? As a related issue we will assess the propriety of the trial court's order directing the warden of the Colorado penitentiary to remit all monies accruing to the credit of the petitioner to the clerk of the court to meet the costs so assessed.

## II.

We are satisfied, and a reading of the federal cases makes it apparent, that what here transpired violated the due process clauses of both the state and federal constitutions. The infirmity fatal in this case was the failure of the trial court to rule upon the petitioner's motion by which he sought access to state procedures designed to provide him with equal justice and the equal protection of the laws.

It has been established beyond peradventure that the equal protection clause of the federal constitution requires state appellate and post conviction remedies, including habeas corpus, to be dispensed to confined indigents in an even-handed manner free from distorting financial hurdles that court costs may pose. *Griffin v. Illinois, supra; Burns v. Ohio, supra; Douglas v. Green, supra; Smith v. Bennett, supra.* The legal device existing in the State of Colorado which provides this equal protection in the post conviction civil remedy of habeas corpus is contained in and governed by C.R.S. 1963, 33-1-3, which allows a poor person to proceed without the payment of costs in a civil action on his making a showing of poverty. We hold the refusal of the trial court to even consider the petitioner's application to proceed in the only manner in which equal protection of the law could be obtained was a violation of the due process rights of Williams.

It perhaps deserves emphasis, in view of the position taken in the brief of the district court, that habeas corpus, while a civil remedy, is not to be viewed and treated as, for example, a contract action. See *Smith v. Bennett, supra.* Federal constitutional standards require consideration of the "freedom writ" in a quasi-criminal light when state procedures are tested for equal protection, and the discretion normally allowed the court under C.R.S. 1963, 33-1-3, is restricted by very tangible federal limitations. See *Draper v. Washington,* 372 U.S. 487, 83 S. Ct. 774, 9 L. Ed.2d 899;

*Lane v. Brown,* 372 U.S. 477, 83 S. Ct. 768, 9 L. Ed.2d 892; *Eskridge v. Washington State Board of Prison Terms & Paroles,* 357 U.S. 214, 78 S. Ct. 1061, 2 L. Ed.2d 1269.

The imposition of costs upon indigents and the financially able alike has been held to be a denial of equal protection of the laws where no device relieves the indigent of the "invidious discrimination" worked by such a scheme. *Smith v. Bennett, supra.* It has been stated that to interpose *ANY* financial consideration between an indigent prisoner and his right to sue for his liberty is constitutionally proscribed. *Id.* We see no difference of substance save subtlety between the "invidious discrimination" worked by a fee imposed upon an indigent before he is allowed to petition, which he cannot pay, and a fee saddled upon him after dismissal, which he also cannot pay. Both practices are effective deterrents. That this was the avowed purpose of the trial court's procedure in this case is not subject to question, for the court states in its brief:

"This participation by them [prisoners] in the cost of government may well serve as a deterrent to frivolous proceedings which should not be encouraged."

The "participation" the learned trial court would here impose serves equally as a deterrent to meritorious and frivolous proceedings, and this distortion in legal rights of access to the courts is precisely what the Supreme Court condemned in *Burns v. Ohio, supra.*

The position that the taxing of costs in a proceeding such as that here involved is mandatory because of the holding in *Colorado Fuel and Iron Co. v. Menapace,* 16 Colo. App. 200, 64 Pac. 584, is not persuasive. As we read the federal cases, the states have a positive duty to maintain the right to the writ of habeas corpus unimpaired if it exists in their jurisprudence as a post-conviction remedy. *Smith v. Bennett, supra; Bowen v. Johnston,* 306 U.S. 19, 59 S. Ct. 442, 83 L. Ed. 455. A reading of the *Menapace* case that would take a

rule designed to operate in civil contract claims brought with leave to proceed in forma pauperis and extend it into the area of habeas corpus petitions is not justifiable analytically and constitutionally. The *Smith v. Bennett* case stands directly blocking such a rationale and to adopt such reasoning would be to court constitutional infirmity as well as to invite outrage.

Nor should much weight be accorded the argument that the district court, by ruling upon Williams' habeas corpus petition and dismissing it on its face, provided sufficient access for the indigent to the courts to cure any constitutional defect. Similar circumstances existed in *Marshall v. Bennett, supra,* where, after refusing to docket Marshall's petition for the lack of a $4 fee, the Iowa court noted that it would have had to deny the petition in any event on the merits. This type of ephemeral "access" to the courts seems not to have impressed the United States Supreme Court as adequate and neither does it seem sufficient to us.

Finally we find without merit the argument based upon C.R.S. 1963, 65-1-1, that, because a judge must act "forthwith" on an application for habeas corpus, there was no time to investigate or hold a hearing on the motion for leave to proceed in forma pauperis. Clearly, no emergency existed. We have stated above and here reiterate that the equal protection clause of the federal constitution and Section 6 of Article II of the Colorado constitution require that rich and poor be afforded equal access to established court procedures. A prisoner's due process rights require, in turn, that he be accorded full and fair consideration of whether he shall have access as an indigent to the established procedures that serve to afford equality of justice and the equal protection of the laws. In short, when a court is so presented with a motion for leave to proceed in forma pauperis, it *must* rule upon it.

III.

So far as the facts of this particular case re-

quire, our analysis might end at this point. However, pursuant to the general superintending power over trial courts vested in us by the Colorado constitution, Art. VI, Sec. 2(1), we feel it appropriate in this circumstance to indicate guidelines for district courts in drafting orders of the sort here involved. More specifically, we refer to occasional orders containing a directive to the warden of the state penitentiary to withhold all or varying fractions of current and accumulated incentive pay or other credits earned by a prisoner and directing their application to the payment of various court costs. Because we feel this practice treads a dubious path, we hereby proscribe it.

The United States Supreme Court has recently determined a particular New Jersey statutory scheme for taxing costs of appellate proceedings against incarcerated indigents to be unconstitutional as a denial of equal protection of the laws. *Rinaldi v. Yeager*, No. 940, decided May 31, 1966. In holding the statutory plan of New Jersey unconstitutional, the Court observed the law applied only to those who were imprisoned following conviction and who had prosecuted unsuccessful appeals. This classification was said to be constitutionally unreasonable:

"To fasten a financial burden only upon those unsuccessful appellants who are confined in state institutions . . . is to make an invidious discrimination."

Although we find it unnecessary to hunt for additional constitutional infirmities in the present situation, we note that, quite obviously, procedures such as were used here apply only to those imprisoned. Whether the legislature, with the ingenuity and flexibility inherent in it, can devise some constitutionally permissible plan, should it want to, is beyond our present scope. The time to make such assessments is when and if legislation announcing the policy of the state is enacted in comprehensive manner so that application is uniform throughout the court system. Experimentation differing from

360

county to county is improper, unequal in application, and not the appropriate means for achieving such ends. ▇▇▇ We additionally seek to avoid a situation where petitions are discouraged to the point where it may be said that, in effect, the writ of habeas corpus has been unconstitutionally suspended. See *Smith v. Bennett, supra.* The Colorado constitution, Art. II, Sec. 21, provides that:

"The privilege of the writ of habeas corpus shall never be suspended, unless when in case of rebellion or invasion, the public safety may require it."

We note that there are times when the writ's issuance may be suspended, but that otherwise it "shall never be suspended."

As a final reason for the exercise of our superintending powers, we note that the denial to prisoners of the fruits of their incentive earnings effort in whole or in part may possibly operate to frustrate rehabilitative and correctional policies set up by prison officers and the legislature. *Cf. California Highway Comm. v. Ind. Acc. Comm.,* 200 Cal. 44, 251 Pac. 808, 49 A.L.R. 1377. We have had no argument or record presented to us on this matter, but, nonetheless, feel propriety demands that our courts leave such matters to official policy makers best able to consider and pass upon them.

In summary, therefore, we state that district courts are no longer to enter orders directing any person or prison official to withhold all or any part of monies earned by prison inmates from their prison activities for application to the payment of court costs. It is hoped that the general tenor of this entire opinion will serve as a guide to court practice in matters not explicitly dealt with.

So ordered.

MR. JUSTICE PRINGLE and MR. JUSTICE SCHAUER concurring in the result only.

MR. CHIEF JUSTICE SUTTON not participating.