Abraham J. Gellinoee, J.
This is an application by the New York City Health and Hospitals Corporation, and the associate director of Bellevue Hospital, for an order authorizing the psychiatric staff of Bellevue Hospital to administer electroshock therapy to a patient, Paula Stein, the respondent herein. Mrs. Stein has objected to this treatment, and refuses to give her consent to it.
This court, on July 11, 1972, after a hearing conducted at Bellevue Hospital, concluded that respondent was mentally ill; accordingly this court issued an order authorizing the retention of the patient for care and treatment (Mental Hygiene Law, § 72). Therefore, the psychiatric staff at Bellevue Hospital, and any other hospital to which the patient may be transferred, is now free to carry out whatever course of treatment they deem advisable, including electroshock therapy, regardless of the patient’s consent and without the necessity of prior judicial approval.
*945 However, petitioners have commendably chosen to proceed in accordance with the spirit of the new recodification of the Mental Hygiene Law (§ 15.03), effective January 1, 1973, which provides that, “ subject to the regulations of the commissioner [of the Department of Mental Hygiene], the director of a facility shall require * * * consent for * * * shock treatment.” Although the statute is silent as to whose consent is required, and no regulations by the Commissioner in this regard have been brought to the court’s attention, the new statute presumably requires the consent of the patient himself, provided he possesses the mental capacity to knowingly consent or withhold his consent, or, in the absence of such mental capacity, the consent of the closest relative, or guardian of the person, if there be any, or, where necessary, of the court (see Anonymous v. State of New York, 17 A D 2d 495 [3d Dept., 1963]). In this case, the patient’s mother has given her consent, for, seeking only the health of her daughter, she has consented to the doctors doing whatever they believe might help her. The patient herself, however, continues in her refusal to consent.
Petitioners are reluctant to proceed with the electroshock therapy on the consent of the mother only, and assert that consent of the patient herself should be dispensed with herein, on the ground that she is incompetent to make a reasoned decision, and that the court should authorize petitioners to administer such electroshock therapy despite the patient’s nonconsent.
Electroshock therapy is a technique by which a current of from 70 to 130 volts of electricity is permitted to flow through the patient’s brain, causing a convulsion equivalent to an epileptic seizure. This form of treatment is the subject of great controversy within the psychiatric profession, both as to its efficacy, and as to its dangers. It has been known to aid significantly in the cure of the mentally ill, as well as to cause such other ailments 'as pulmonary edema, bone fractures, and, in exceedingly rare instances, even death.
In a case such as this, where the determination may be critical to the future health and life of a patient suffering from mental disorder, a court, not blessed with omniscience, must tread cautiously. It must consider both the benefits to be derived if its decision is correct, and also the costs of error. It must make what the late Mr. Justice Hablan described as “ a very fundamenal assessment of the comparative social [and in this case personal] costs of erroneous factual determinations ” (Matter of Winship, 397 U. S. 358, 370 [1970] [concurring opn.]). On the one hand is the possibility of harm, conceivably even fatal harm, serving no useful purpose, if the court erroneously permits *946 the treatment. On the other hand is the fear of petitioners’ staff that ‘ ‘ if this treatment is not undertaken and completed the patient’s condition will be significantly impaired to the extent of possible irreversibility.”
The choice is hardly a simple one. But since obviously the greatest suffering from an incorrect decision will be borne by respondent herself, the court must permit her refusal to be determinative unless the evidence is sufficient to convince the court that she lacks the mental capacity to knowingly consent or withhold her consent.
The evidence adduced at the hearing on this application has left the issue far from conclusively resolved. Eminent and learned psychiatric specialists have testified before the court — both as to respondent’s capacity to know and understand the nature and extent of her illness and the consequences of her refusal to consent to electroshock treatment, as well as to the desirability of electroshock treatment in her circumstances — and have reached different conclusions. All of the witnesses are agreed that respondent suffers from schizophrenia which is chronic, probably undifferentiated, with tendencies for acute flare-ups. And almost all are agreed that she continues to require psychiatric treatment within a structured environment. But there is a sharp dispute as to what form that treatment should take.
The doctors produced by petitioner testified that, since respondent did not respond to conventional psychopharmacological treatment, and in view of her marked improvement after two electroshock treatments, electroshock treatment is the treatment of choice for her condition; and that respondent ‘ ‘ is not now nor was she during any period of her hospitalization able to make a rational judgment about any treatment she might require. ’ ’
On the other hand, the independent psychiatrists permitted by this court to examine respondent (Judiciary Law, § 35, subd. 3) have concluded that “ she has the mental competence to consent or withhold consent for her treatment and to participate with her physicians in the choice of appropriate treatment modalities. ’ ’ Moreover, they conclude, ‘ ‘ electro-convulsive therapy is not clinically indicated ” — urging instead the use of drugs such as phenothiazines.
From all of the evidence before the court, as well as from its own observations of respondent, the court has concluded that she is sufficiently mentally ill to require further retention. However, that determination does not imply that she lacks the men *947 tal capacity to knowingly consent or withhold her consent to electroshock therapy. After considering all the evidence, including the court’s own conversations with respondent in open court in the presence of all the doctors, the court concludes that respondent does have the mental capacity to know and understand whether she wishes to consent to electroshock therapy. It does not matter whether this court would agree with her judgment; it is enough that she is capable of making a decision, however unfortunate that decision may prove to be. It is her own well-being that is at stake, and, giving effect to the spirit of section 15.03 of the Mental Hygiene Law (eff. Jan. 1, 1973), she must be permitted to consent or withhold her consent.
The application is accordingly denied.