## No. 28179

## Ralph Goedecke v. State of Colorado, Department of Institutions

(603 P.2d 123)

Decided October 10, 1979.  Opinion modified and as modified rehearing denied November 19, 1979.

David E. Skaggs, Skaggs, Stone & Sheehy, for appellant.

J. D. MacFarlane, Attorney General, Joseph N. de Raismes, First Assistant Attorney General, Human Resources Section, Dennis J. Sousa, Assistant, Edward R. Martinez, Assistant, for appellee.

James W. Dean, for amicus curiae Legal Aid Society of Metropolitan Denver, Inc.

Lynn K. Daily, for amicus curiae Boulder County Legal Services.

Marianne Wesson, for amicus curiae American Civil Liberties Union of Colorado.

Betty L. Nordwind, for amicus curiae Colorado Bar Association, Office for the Mentally Disabled.

*En Banc.*

Per Curiam

The district court held that the Mental Health Center of Boulder County, Inc. (MHC) could administer to the appellant Goedecke, in spite of his objections, an antipsychotic drug (prolixin decanoate). Goedecke appealed directly to this Court pursuant to section 13-4-102(1)(b), C.R.S. 1973. The State of Colorado, Department of Institutions (State) became a party appellee in this Court in order to defend the regulations put in issue by the appellant. We reverse the order of the district court, and hold that appellant is entitled to a trial transcript at state expense.

Goedecke underwent a court-requested psychiatric evaluation and was diagnosed as a paranoid schizophrenic. The examining psychiatrist determined that he was dangerous and gravely disabled.[1] Goedecke then was certified and detained for short-term mental treatment.[2]

At the certification hearing, a psychiatrist testified that Goedecke would be confined for treatment for up to three weeks at a psychiatric hospital, and would be treated with prolixin thereafter on an outpatient basis. Prolixin had been selected to alter his psychotic thought patterns and to minimize his dangerousness.

Testimony at the hearing adduced that, aside from its behavior-modifying capacity, prolixin can generate such short-term side effects as stiffness, shakiness, restlessness and dizziness. Moreover, it was established that prolixin therapy can produce a long-term neurological condition called tardive dyskinesia. This condition initially causes involuntary tongue and lip movement. It may progress to involuntary movement of other muscles such as arm, shoulder and trunk muscles, and may cause permanent disability. Indeed, Goedecke's reason for refusing prolixin treatment was that he had previously been treated with the drug and had experienced some of its short-term adverse side effects, including passing out, falling down, loss of breath, stiff tongue, disordered thinking and a feeling like being "half dead."

The appellant's expert medical witness, a psychiatrist, testified that prolixin causes severe side effects in half of the patients treated with it.[3] He also suggested that "milieu therapy"[4] and psychotherapy are available as alternative and preferred methods of treating paranoid schizophrenia.

---

[1] The specific bases for the "dangerousness" finding were the appellant's arrest on a misdemeanor assault charge and his verbal threats against a judge and others.

[2] The short-term certification was pursuant to section 27-10-107, C.R.S. 1973.

[3] The expert witness testified that, aside from physical side effects, prolixin causes severe depression (often accompanied by suicidal feelings) in 25-30 percent of the persons treated with it.

[4] "Milieu therapy" was described at the certification hearing as treatment by means of a "beneficent environment with the most positive attitudes on the part of the surrounding staff" and an opportunity to participate in "physical therapy and occupational therapy."

In spite of the appellant's persistent protestations, based on his prior experience of adverse side effects, prolixin medication was continued. In fact, because of his resistance, it was given in long-lasting injections. These injections, which transmit the drug's effects for up to eight weeks, were continued even after a written notice refusing such treatments, signed by the appellant, was placed in the hospital chart and brought to the treating psychiatrist's attention.

The issue is whether the appellant must submit to prolixin therapy without his consent and over his objection. Appellant asserts that forcing this drug on him violated his legal and constitutional rights. Since we agree with his contention that Colorado law protects one in his situation from being forced to undergo treatment with drugs having serious deleterious side effects, we need not reach the constitutional issues raised.[5] *Times Call Publishing Co. v. Wingfield,* 159 Colo. 172, 176-177, 410 P.2d 511, 513 (1966).

Goedecke was certified for short-term treatment under section 27-10-107, C.R.S. 1973 (and 1978 Cum. Supp.). The entire tenor of the Article in which that section appears is to recognize and protect the dignity and legal rights[6] of patients treated pursuant to its provisions. Among the purposes of Article 27-10 declared by the General Assembly are:

(c) To provide the fullest possible measure of privacy, dignity, and other rights to persons undergoing care and treatment for mental illness;

(d) To encourage the use of voluntary rather than coercive measures to secure treatment and care for mental illness. Section 27-10-101(1), C.R.S. 1973.

Moreover, the legislature has directed that this statute is to be "liberally construed" to carry out these purposes. Section 27-10-101(2), C.R.S. 1973.

Section 27-10-104 declares that: "Unless specifically stated in an order by the court, a respondent shall not forfeit any legal right or suffer

---

[5] We note in passing the appellee's contention that the case is moot in light of counsels' statements at oral argument that the patient had been released during pendency of this appeal, then recently has been rehospitalized. In our view, the dispute which gave rise to this appeal is one "capable of repetition, yet evading review," and therefore the case is not moot. *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147, 161 (1973); *Star Journal v. County Court,* 197 Colo. 234, 591 P.2d 1028 (1979).

[6] *See, e.g.,* sections 27-10-116 (right to treatment), 27-10-117 (rights during treatment), 27-10-119 (right to vote), 27-10-112 (right to speedy appeal), 27-10-113 (habeas corpus), 27-10-115 (right to sue for discrimination).

legal disability by reason of the provisions of this article." There is no provision, in any court order in the record before us, declaring the appellant legally disabled from exercising whatever legal right a medical patient normally has to decline treatment with a dangerous or obnoxious drug.

■ The courts of this state have long acknowledged the physician's obligation to obtain the patient's informed consent not only for surgery,[7] but also for treatment with drugs having possible harmful side effects.[8] As Justice Cardozo declared in *Schloendorff v. Society of New York Hospitals,* 211 N.Y. 125, 105 N.E.92, 93 (1914), "every human being of adult years and sound mind has a right to determine what shall be done with his own body." The above cited statutory provisions recognize that mental and emotional illnesses are not crimes and that hospitalization for their treatment is not to be confused with incarceration for punishment. It would be inconsistent with the statutes' spirit and purpose to insist that a patient's common law right to decline medical treatment is abrogated by short-term certification alone. Instead we conclude that this right is to be numbered among those protected by C.R.S. 1973, 27-10-104 and is therefore preserved intact in the absence of some finding, reached by a competent tribunal, that the patient's illness has so impaired his judgment that he is incapable of participating in decisions affecting his health.

■ The record in this case contains no finding that appellant lacked the capacity to participate in such decisions or that his refusal to submit to treatment with prolixin was itself irrational or unreasonable. Lacking such findings, we conclude that the statutory and common law of this state afford the appellant a right to withhold consent to the administration of prolixin in non-emergency circumstances.

After the certification hearing, appellant petitioned the trial court for permission to proceed with the appeal[9] *in forma pauperis* and for provision, at state expense, of a transcript of the hearing. The court allowed the appellant to proceed *in forma pauperis,* but denied the transcript at state expense on the basis that a mental health proceeding is a civil matter.[10]

---

[7] *Mallett v. Pirkey,* 171 Colo. 271, 466 P.2d 466 (1970); *Maercklein v. Smith,* 129 Colo. 72, 266 P.2d 1095 (1954); *Martin v. Bralliar,* 36 Colo. App. 254, 540 P.2d 1118, 1120 (1975). Our courts have merely followed the trend of modern cases. *See, e.g., Canterbury v. Spence,* 150 U.S. App.D.C. 263, 464 F.2d 772 (D.C. Cir. 1972); *Wilkinson v. Vesey,* 110 R.I. 606, 295 A.2d 676 (1972). The constitutional right of privacy has been recognized as establishing an individual's autonomy over her own body. *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

[8] *Hamilton v. Hardy,* 37 Colo. App. 375, 549 P.2d 1099 (1976). Other courts have recognized that involuntarily committed mental patients have a right to refuse prolixin treatment, at least in the absence of an emergency. *Rennie v. Klein,* 462 F.Supp. 1131 (D.N.J. 1978); Cf. *Winters v. Miller,* 446 F.2d 65 (2d Cir. 1971), *accord, New York City Health & Hosp. Corp. v. Stein,* 70 Misc. 2d 944, 335 N.Y.S.2d 461 (1972) (electroshock).

[9] The respondent in a mental health commitment proceeding has a statutory right to appeal, section 27-10-111(3), C.R.S. 1973.

[10] In order to present the issues in this case on appeal, the Colorado Bar Association Office for the Mentally Disabled paid for the trial transcript.

██ Mental commitment proceedings technically are civil, but the procedures[11] and resulting deprivation of liberty are more akin to the criminal process. It has long been the rule that an indigent criminal appellant is entitled constitutionally to a trial transcript at state expense. *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *In re Patterson's Petition,* 136 Colo. 401, 317 P.2d 1041 (1957).

This Court allowed a transcript at state expense in *habeas corpus* proceedings, labelled as "civil", because a transcript was necessary to challenge a criminal conviction. *Williams v. District Court,* 160 Colo. 348, 417 P.2d 496 (1966). However, a transcript at state expense was not required in civil proceedings involving rescission of a contract. *Almarez v. Carpenter,* 173 Colo. 284, 477 P.2d 792 (1970).

██ Mental commitment proceedings, however, concern questions of personal liberty and due process protection. The U.S. Court of Appeals for the Tenth Circuit, requiring a right to counsel in mental commitment proceedings, described the strict due process requirements necessary when a serious deprivation of liberty may result:

"It matters not whether the proceedings be labelled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration — whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feeble-minded or mental incompetent — which commands observance of the constitutional standards of due process." *Heryford v. Parker,* 396 F.2d 393, 396 (10th Cir. 1968).

This Court has affirmed the high due process standard required for mental commitment:

". . . [T]he state's power to confine persons . . . must be carefully restrained by procedural safeguards and can be invoked only by conditions 'great enough to justify such a massive curtailment of liberty.' *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394, 402 (1972)." *People v. Lane,* 196 Colo. 42, 581 P.2d 719 (1978).

Courts in other states which have considered whether a transcript must be provided at state expense to an indigent appellant in a mental health proceeding have ruled uniformly that due process mandates its provision. *Suzuki v. Quisenberry,* 411 F.Supp. 1113 (D. Hawaii 1976); *Dixon v. Attorney General of Pennsylvania,* 325 F.Supp. 966 (M.D. Pa. 1971); *Shuman v. State,* 358 So.2d 1333 (Fla. 1978); and *In Re Minehan,* 130 N.J. Super. 298, 326 A.2d 118 (1974). These cases declare that the deprivation of liberty in mental commitment proceedings is

---

[11] A mental commitment case is brought in the name of the People of the State of Colorado and the prosecutor is a district or county attorney. Section 27-10-111(5), C.R.S. 1973.

similar to the deprivation of liberty in criminal proceedings, and consequently, the same due process considerations apply.

We conclude, for the same reasons, that Goedecke, an indigent appellant in a mental health proceeding for involuntary confinement and treatment, has a right under the due process guarantees of the United States and Colorado constitutions to a transcript at state expense.

The appellant has raised other substantial issues questioning the validity of certain regulations and asserting constitutional protections. Since we have concluded that Colorado statutes and case law require us to reverse the district court, we need not reach these other issues.

The judgment is reversed and the cause is remanded to the district court for disposition not inconsistent with this opinion.