The PEOPLE of the State of Colorado, Petitioner-Appellee,

In the Interest of Joseph P. MEDINA, III, Respondent-Appellant,

Colorado Department of Institutions, Intervenor.

No. 81CA0918.

Colorado Court of Appeals, Div. II.

Sept. 23, 1982.

Rehearing Denied Nov. 12, 1982.

Certiorari Granted March 28, 1983.

Albert Eckhardt, City Atty., Morris P. Evans, Asst. City Atty., Denver, for petitioner-appellee.

Frank P. Slaninger, Denver, for respondent-appellant.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessy, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Sarah Scott Sammons, Asst. Atty. Gen., Denver, for intervenor.

VAN CISE, Judge.

Based on a finding of the trial court that he was mentally ill, and that he was not dangerous to himself but was dangerous to others, respondent, Joseph Paul Medina (the patient), was involuntarily committed to the Fort Logan Mental Health Center under long term certification. He appeals the order of the probate court, entered on the People's motion, authorizing administration of antipsychotic medication without his consent and over his objections. We reverse.

At the hearing on the motion, the ward psychiatrist was the only witness. The patient record was not produced. The patient was present, but did not testify.

The evidence was that for at least twelve or thirteen years the patient has been in and out of mental institutions and has "been on a high dose of medication [including antipsychotic drugs] for a long, long period of time," but his mental condition has not improved. The psychiatrist's opinion was that the patient was "presently mentally ill, that he suffers from a disease, paranoid schizophrenia, and that he is at the present time, most of the time, psychotic." The psychiatrist said he had discussed with the patient the benefits and risks involved in taking these drugs. The patient was able to make rational statements concerning the medication when taking it, but was unable to discuss the matter rationally when refusing it.

The psychiatrist testified that, with the medication, the patient becomes sedated and less psychotic, but has side effects such as dry mouth, blurred vision, lowered blood pressure, light headedness, and fainting. Without it, he suffers frequent headaches (helped by ordinary headache remedies), is agitated, has outbursts of assaultive behavior, and suffers delusions. If he continues the medication, "he is very much at risk in the not too distant future" of developing tardive dyskinesia. If he does not take the medication, he could be "in severe pain and strike out," "there would be a greater incidence of seclusion, and he would not be able to function very well on the ward." The psychiatrist indicated that without this medication the patient would probably be institutionalized the rest of his life; but even with it, he would not be able to function in the community and would never get "any father than a structuralized halfway house."

From the psychiatrist's testimony and the court file, the court found that the patient "was mentally ill with a diagnosis of paranoia." It also found that "as a result of the paranoia and delusions suffered" by the patient, he "is not able to participate in a decision concerning treatment with medications," and that "his refusal to take medications was unreasonable."

It further found that:

"[W]ith regular medication [the patient] will most probably experience less anxiety resulting in his release to a less restrictive environment and permit [him] to live a more stable life.

"The medical chart does not reflect any past major side effects from the use of antipsychotic medication. The doctor's

testimony also suggests that tardive dyskinesia and other side effects from the use of antipsychotic medications can be properly monitored and controlled.

"The risk of tardive dyskinesia is not so great so as to preclude the use of antipsychotic medications such as Prolixin and Thorazine."

The court then ordered that:

"The physician attending [the patient] may administer antipsychotic medications such as Prolixin and Thorazine, however, without limitations to the two medicines and the attending physician shall use whatever medical procedures good medical practice would direct to properly monitor and control the medications.

"This order permitting the use of involuntary medication shall exist so long as [the patient] is under certification."

This order was stayed pending appeal.

## I.

■ On appeal, the attorney for the patient admits that, by reason of mental illness, the patient is unable to give his informed consent to the administration of the antipsychotic medication. However, he contends that the patient still has a right to refuse medication and that forced administration of drugs poses substantial risks to his well-being and violates his constitutional rights to liberty and privacy.

In *Goedecke v. State*, 198 Colo. 407, 603 P.2d 123 (1979), this same contention was made on behalf of a patient under short-term certification. The trial court held that such a patient could be given the antipsychotic drug Prolixin over his objections. On appeal, the Supreme Court did not reach the constitutional issue. It determined that the patient's common law right to decline medical treatment is not abrogated by short-term certification alone, "that this right is to be numbered among those protected by [§ 27–10–104, C.R.S.1973],[1] and is therefore preserved intact in the absence of some finding, reached by a competent tribu-

nal, that the patient's illness has so impaired his judgment that he is incapable of participating in decisions affecting his health." It noted that:

"The record in this case contains no finding that [the patient] lacked the capacity to participate in such decisions or that his refusal to submit to treatment with prolixin was itself irrational or unreasonable. Lacking such findings, we conclude that the statutory and common law of this state afford the [patient] a right to withhold consent to the administration of prolixin in non-emergency circumstances."

In the instant case, the trial court made the findings that were missing in *Goedecke.* And at least the finding that the patient was not capable of participating in treatment decisions regarding his mental illness was supported by the evidence and was admitted by the patient's attorney. Therefore, that finding is binding on appeal. *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970).

■ In *Goedecke,* the court was not called on to, and did not, determine whether this right to decline medical treatment is lost to a patient who is mentally incapable of deciding that question for himself. We hold that he does not lose this right. *See generally In re Guardianship of Roe,* 383 Mass. 415, 421 N.E.2d 40 (Mass.1981); *Superintendent of Belchertown State School v. Saikewicz,* 373 Mass. 728, 370 N.E.2d 417 (1977); *Scott v. Plante,* 532 F.2d 939 (3d Cir.1976); *Rogers v. Okin,* 478 F.Supp. 1342 (D.Mass.1979) (Rogers I), *modified,* 634 F.2d 650 (1st Cir.1980) (Rogers II), *remanded in* —— U.S. ——, 102 S.Ct. 2442, 73 L.Ed.2d 16 (1982) *sub nom. Mills v. Rogers* (Rogers III); *Rennie v. Klein,* 462 F.Supp. 1131 (D.N.J.1978), *further proceedings,* 476 F.Supp. 1294 (D.N.J.1979), *modified,* 653 F.2d 836 (3d Cir.1981); *Davis v. Hubbard,* 506 F.Supp. 915 (N.D.Ohio 1980).

■ However, where, as here, the patient has been adjudicated a mental incom-

---

1. Section 27–10–104, C.R.S.1973, provides that: "Unless specifically stated in an order by the court, a respondent shall not forfeit any legal right or suffer legal disability by reason of the

provisions of this article."

petent and is institutionalized, his failure to consent to a particular treatment is not an absolute bar to that treatment. *Davis v. Hubbard, supra.* Rather, the absence of consent must be weighed against competing state interests. *Rennie v. Klein, supra.* Among these interests are a police power interest in maintaining order within the institution and in preventing violence to the patient and to third persons, and a *parens patriae* interest in alleviating the sufferings of mental illness and in providing effective treatment for persons who are unable to care for themselves. *Rogers II, supra.* There must be a balance between the patient's and the state's interests, and the decision on whether to order this medication can only be based on the facts of each individual case.

■ The intervenor and the People suggest that the determination of the propriety of administering antipsychotic medication without the patient's consent and over his objections should be made by the treating physician, in conjunction with his colleagues. They argue that judges lack expertise in psychiatry and that, therefore, judicial review of treatment decisions necessarily must be limited. We agree that consideration should be given to the views of the attending physician who has personal knowledge of the patient and to the opinions of the medical experts. But, as stated in *In re Guardianship of Roe, supra:*

> "The question presented by the [patient's] refusal of antipsychotic drugs is only incidentally a medical question. Absent an overwhelming State interest, a competent individual has the right to refuse such treatment. To deny this right to persons who are incapable of exercising it personally is to degrade those whose disabilities make them wholly reliant on other, more fortunate, individuals. In order to accord proper respect to this basic right of all individuals, we feel that if an incompetent individual refuses antipsychotic drugs, those charged with his protection must seek a judicial determination of substituted judgment. No medical expertise is required in such an inquiry, although

medical advice and opinion is to be used for the same purposes and sought to the same extent that the incompetent individual would, if he were competent. We emphasize that the determination is not what is medically in the [patient's] best interests—a determination better left to those with extensive medical training and experience. The determination ... will probe the incompetent individual's values and preferences, and such an inquiry, in a case involving antipsychotic drugs, is best made in courts of competent jurisdiction."

Our Supreme Court in *Goedecke, supra,* in referring to a "finding reached by a competent tribunal," takes the same position. *See also In re A.W.,* 637 P.2d 366 (Colo.1981). And, the General Assembly has arrived at the same conclusion by its recent amendment to the statute in which it conferred jurisdiction on the courts "to accept a petition by a treating physician and to enter an order requiring that the respondent accept such treatment, or in the alternative, that the medication be forcibly administered to him." Colo.Sess.Laws 1982, ch. 116, at 447, adding § 27–10–111(4.5), C.R.S.1973. *See also* § 27–10–109(4), C.R.S. 1973 (1981 Cum.Supp.).

We, therefore, hold that, absent an emergency situation calling for immediate action (in which event the least intrusive means should be used by the physician to meet the emergency), antipsychotic medication shall not be administered to a mentally incompetent institutionalized patient who has not given his consent to this medication unless ordered by a court following a proper hearing.

Before ruling on the question, "while the mentally [incompetent] person need not testify or be present at the proceedings if the person's presence would serve no useful purpose, the trial judge should talk with the person and observe the person's physical and mental condition. The wishes of the person, although not conclusive, are relevant, and a strong indication that the person does not wish to be [medicated with antipsychotic drugs] must weigh heavily

188

against authorizing the procedure." *In re A.W., supra,* (in a different context but applicable to the present situation).

In addition to the patient's interests and preferences, other factors to be considered by the court in deciding whether the treatment should be ordered include but are not limited to: the urgency of decision; the extent of impairment of the patient's mental faculties; the patient's level of understanding and probable reaction; the patient's religious beliefs, if any; the clarity of professional opinion as to what is good medical practice; the intrusiveness of the proposed treatment; the complexity, risk, and novelty of the proposed treatment; the prognosis without the proposed treatment; the prognosis with the proposed treatment; the possibility and probability of adverse side effects; whether there is an alternative that is less intrusive than the treatment proposed which would protect the public interest; the impact on the patient's family; the consent or absence of consent of the patient's family or guardian; the good faith of those advocating or objecting to the proposed treatment and the likelihood of conflicting interests; the interests of third persons in and outside of the institution; the risks of physical harm to persons (including the patient, other patients, and institution personnel) or of damage to property in the institution without the proposed treatment; and the effect on the orderly and efficient administration of the institution if the proposed treatment is not given. *See In re Guardianship of Roe, supra; In re Spring,* 380 Mass. 629, 405 N.E.2d 115 (Mass.1980).

The court shall make findings for each pertinent factor, indicating within each finding those reasons for and against treatment. Following this, it must analyze the relative weight of the findings in that particular case. Treatment with antipsychotic drugs should not be ordered unless, after considering all of the pertinent factors, the court determines that there exists a state interest or interests of sufficient magnitude to override the absence of such consent. Also, if an order is entered, it should include provisions for periodic review.

In the instant case, no emergency was present and the evidence was insufficient to enable the court to, and it did not, consider and make findings as to most of the factors. It did not make any attempt to communicate with the patient or to ascertain his wishes and concerns. And, the duration of the authorization was made coextensive with his certification without any provision for review. Therefore, the order cannot stand.

The order is reversed, and the cause is remanded for further proceedings consistent with this opinion.

BERMAN and KELLY, JJ., concur.