25CA0838 Peo in Interest of Schoening 07-24-2025

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 25CA0838
City and County of Denver Probate Court No. 25MH377
Honorable Beth A. Tomerlin, Magistrate

_____

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Ian Schoening,

Respondent-Appellant.

_____

ORDER AFFIRMED

Division VI
Opinion by JUDGE TOW
Yun and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 24, 2025

_____

Katie McLoughlin, Acting City Attorney, Kathleen O'Leary Bell, Assistant City
Attorney, Daniel Horwitz, Assistant City Attorney, Denver, Colorado, for
Plaintiff-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant.

¶ 1    Respondent, Ian Schoening, appeals the probate court's order authorizing the staff at the Colorado Mental Health Hospital at Fort Logan (the hospital) to medicate him involuntarily.  We affirm.

I.    Background

¶ 2    Schoening was committed to the hospital in April 2025 after being found incompetent to proceed in multiple criminal cases.  He was diagnosed with unspecified mood disorder, and presented with symptoms including responding to internal stimuli, dysregulated sleep, quick mood lability, and the inability to participate in admission interviews due to grossly disorganized and tangential thought processes.  Soon after Schoening's admission, he was placed in seclusion and restraints and administered medications on an emergency basis after "indecently exposing himself to staff and peers."  Schoening was also placed on assault precautions for posturing at staff and was considered an escape risk.

¶ 3    At the request of Dr. Colleen Bono, Schoening's staff psychiatrist at the hospital, the People petitioned the probate court for authorization to involuntarily treat Schoening with Haldol (haloperidol), Invega (paliperidone), Risperdal (risperidone), Zyprexa (olanzapine), "Eskalith/Lithobid/Lithium," Ativan (lorazepam),

1

Benadryl (diphenhydramine), Cogentin (benztropine), and Inderal (propranolol).

¶ 4    The probate court held an evidentiary hearing at which Dr. Bono and Schoening testified. Dr. Bono explained Schoening's disorder and accompanying symptoms. She described the requested medications, the possible side effects, and their necessity in treating Schoening's symptoms.

¶ 5    Schoening testified that he was willing to take the requested medications without a court order. However, he questioned the efficacy of the medications generally and testified at length concerning the various side effects he has experienced.

¶ 6    The probate court granted the petition, finding that Dr. Bono's testimony was "essentially uncontroverted" and "credible" and that Schoening's testimony, to the extent it disagreed with or was contradicted by Dr. Bono, was "not . . . entirely credible." The court also found that the People had established all four elements for the involuntary administration of medication set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), and, accordingly, ordered the administration of the requested medications to Schoening against his will.

## II.    Legal Principles and Standard of Review

¶ 7    An involuntarily committed person retains the right to refuse treatment. *See id.* at 971. Even so, a court may authorize the involuntary administration of medication if the People prove the following elements by clear and convincing evidence:

> (1) the patient is incompetent to effectively participate in the treatment decision;
>
> (2) treatment by antipsychotic medication is necessary to prevent a significant and likely long-term deterioration in the patient's mental condition or to prevent the likelihood of the patient's causing serious harm to himself or others in the institution;
>
> (3) a less intrusive treatment alternative is not available; and
>
> (4) the patient's need for treatment by antipsychotic medication is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment.

*Id.* at 973. We determine whether the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. A physician's testimony alone may be sufficient to satisfy the *Medina* test. *Id.* at ¶ 30.

¶ 8     Applying the *Medina* test presents a mixed question of fact and law, meaning we defer to the probate court's factual findings if supported by the record but review its legal conclusions de novo. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.  It is for the probate court, as the fact finder, to determine witness credibility; the sufficiency, probative effect, and weight of the evidence; and the inferences and conclusions to be drawn from it.  *Id.*

### III.   Analysis

¶ 9     Schoening contends that the evidence was insufficient to prove the first *Medina* element: that he is incompetent to effectively participate in his treatment decisions.  We disagree.

¶ 10    To satisfy the first *Medina* prong, the People must show "that the patient is incompetent to effectively participate in the treatment decision."  *Medina*, 705 P.2d at 973.  "[A] court is prohibited from ordering the forced medication of an involuntarily committed . . . patient unless the court is satisfied that the patient's mental illness has so impaired his judgment as to render him 'incapable of participating in decisions affecting his health.'"  *Id.* (quoting *Goedecke v. State, Dep't of Insts.*, 603 P.2d 123, 125 (Colo. 1979)).

4

¶ 11    The record supports the probate court's findings.  Dr. Bono testified that she diagnosed Schoening with an unspecified mood disorder.  However, she also explained that she was "leaning towards schizoaffective disorder bipolar type" because Schoening shows evidence of "schizoaffective disorder and grossly disorganized behaviors, [he is] unable to maintain hygiene, [and exhibits] psychotic thought processes, [and] some paranoia."  Dr. Bono testified that Schoening meets the statutory definition of a person with a mental health disorder — namely, that he is a person with a substantial disorder of the cognitive and emotional processes that grossly impair his judgment and capacity to recognize reality and to control his behavior.  *See* § 27-65-102(22), C.R.S. 2024.

¶ 12    Dr. Bono opined that Schoening is currently incompetent to effectively participate in his treatment decisions.  Dr. Bono explained that while Schoening has shown some improvement while on emergency medications, he "is still gravely disabled [and] still doesn't have the full insight into his psychiatric history and disorder."  For example, Dr. Bono testified that she has been unable to obtain "a full medical history due to [Schoening's] lack of ability to participate."  And while Dr. Bono has attempted to discuss her

plan for the requested medications with Schoening, he is "limited by his lack of insight and desire to be off medications." Further, Dr. Bono testified that when they talk about medications Schoening becomes "pretty agitated," so she changes the subject. Based on these difficulties, Dr. Bono testified that Schoening is unable to have a meaningful discussion with her about the risks and benefits of treatment "at this time."

¶ 13    We are not persuaded otherwise by Schoening's assertion that he is competent to effectively participate in the treatment decision because his testimony concerning this element "contradicted" that of Dr. Bono "on several occasions." Schoening points to his testimony accurately describing some of the potential side effects of the medications and the other medications available to treat those side effects. He also points to his testimony that he is willing to take the medications to "comprehend and understand" even though none of the requested medications have been helpful "on a consistent basis."

¶ 14    But Dr. Bono testified that any willingness on Schoening's part to take some of the medications — he continues to object to taking lithium — has been "a pretty recent development."

Moreover, Dr. Bono testified that Schoening has had "four previous hospitalizations" over "the last seven years" and eighteen competency evaluations. Dr. Bono explained that "typically, what occurs is he's hospitalized, stabilized on medications, goes back to jail, [is] non-complian[t] with medications in jail, . . . will decompensate, and then [is] readmitted back to the facility." And Dr. Bono testified that Schoening was only "3 percent medication compliant" before being admitted to the hospital — meaning, "maybe he took [his medications] three out of 100 days he was [in jail]."

¶ 15    Weighing this conflicting evidence, the probate court credited Dr. Bono's testimony, finding it "essentially uncontroverted" and "credible," and found Schoening's testimony, to the extent it disagreed with or was contradicted by Dr. Bono, "to not be entirely credible . . . specifically regarding [Schoening's] mental health history, his diagnosis, symptoms, his current presentation and need for the recommended treatment." We are bound by those findings. *See People in Interest of Strodtman*, 293 P.3d 123, 132 (Colo. App. 2011); *People in Interest of Ramsey*, 2023 COA 95, ¶ 30.

¶ 16    We likewise reject Schoening's assertion that his competence to effectively participate in the treatment decisions is demonstrated by his ability to testify about his experiences with side effects, the risk of future side effects, his willingness to take the medications, his acknowledgment that he suffers from mental illness, and his desire to get better.  The first *Medina* element does not ask simply whether a patient has the ability to "articulate his or her preferences" regarding treatment.  *Strodtman*, 293 P.3d at 132.  It asks whether the patient is competent to *effectively* participate in the treatment decision.  *Medina*, 705 P.2d at 973.  "To participate effectively contemplates action in addition to words."  *Strodtman*, 293 P.3d at 132.  For the reasons discussed above, Dr. Bono's testimony is sufficient to support the probate court's finding that Schoening is not competent to *effectively* participate in the treatment decision.

¶ 17    Because Schoening does not challenge the probate court's findings concerning the other *Medina* elements, we conclude the evidence was sufficient to support the medication order.

## IV.    Disposition

¶ 18    The order is affirmed.

8

JUDGE YUN and JUDGE SULLIVAN concur.