**Rose BROWN, Plaintiff,**

v.

**Donald R. JENSEN, M.D., et al., Defendants,**

and

**State of Colorado, Department of Institutions, Intervenor.**

**Civ. A. No. 80–JM–688.**

United States District Court, D. Colorado.

Oct. 6, 1983.

Susan E. Perry, Colorado Legal Services, Denver, Colo., for plaintiff.

Carol M. Welch, Hall & Evans, John L. Breit and Susan Smith Fisher, Hansen & Breit, P.C., Richard J. Bernick, Bernick & Moch, Denver, Colo., for defendants.

Margery T. Bornstein, Asst. Atty. Gen., Denver, Colo., for intervenor.

## MEMORANDUM OPINION AND ORDER

JOHN P. MOORE, District Judge.

THIS MATTER is before me on the plaintiff's motion for partial summary judgment. In her motion, plaintiff requests judgment as a matter of law that the failure of Colo.Rev.Stat. § 27–10–107 (1973) to require a mandatory hearing for persons committed under that statute at the time of certification violates due process and equal protection of the laws as guaranteed under the United States Constitution and 42 U.S.C. § 1983. Plaintiff further seeks a judgment that defendants' policies and procedures concerning access by committed patients or their counsel to the patients' medical records violate due process as guaranteed under the United States Constitution and 42 U.S.C. § 1983 and Colo.Rev.Stat. § 27–10–116(1)(a) (1973).

The complaint arises from the events surrounding the certification and short-term commitment of plaintiff Rose Brown in April of 1980. The complaint requests relief in the nature of a declaratory judgment that Colo.Rev.Stat. § 27–10–107 (1973) is unconstitutional. It also alleges that certain conduct of the defendants during plaintiff's hospital admission and stay was violative of her constitutional rights. Finally, plaintiff requests compensatory damages

for the torts of outrageous conduct, battery, and invasion of privacy. Jurisdiction in this matter is invoked under 28 U.S.C. § 1331(a) and 28 U.S.C. § 1343(3) and (4). This Court has authority pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure to grant the requested declaratory relief.

The following facts relevant to the determination of the pending motion are undisputed:

1. Plaintiff was taken into custody by officers of the Weld County Sheriff's Department on April 11, 1980. She was detained pursuant to Colo.Rev.Stat. § 27–10–105 (1973) for a 72-hour treatment and evaluation period.

2. On April 14, 1980, the day plaintiff's treatment and evaluation period was due to expire, plaintiff expressed a desire to be discharged.

3. Because plaintiff was not willing to remain hospitalized as a voluntary patient, defendant Dr. Jensen initiated short-term certification proceedings on April 15, 1980.

4. Certification papers were received by Weld County District Court on April 18, 1980.

5. On April 21, 1980, the next business day, the court appointed an attorney to represent plaintiff on a provisional basis. The attorney did not file a written request for review by the court of the certification.

6. After obtaining legal assistance, counsel for plaintiff attempted to gain access to plaintiff's medical file in the custody of the hospital. Pursuant to hospital policy, access was denied until permission was granted by defendant Jensen. Access to the file was not gained until April 30, 1980.

7. On April 28, 1980, plaintiff was discharged to a half-way house.

### I.

A review of the statutory commitment procedures will precede my examination of the merits of plaintiff's arguments. Colo. Rev.Stat. § 27–10–105 (1973) sets forth the procedure whereby persons may be committed involuntarily for psychiatric treatment and evaluation in emergency situations. Under § 27–10–105(1)(a), any person who appears to be mentally ill and, as a result, an imminent danger to himself or others, or appears to be gravely disabled, may be taken into custody by a peace officer or professional person upon probable cause. The person suspected of being mentally ill can be involuntarily placed in a treatment facility for a 72-hour treatment and evaluation period. Once admitted, Colo.Rev.Stat. § 27–10–105(3) (1973) provides that the treatment facility can detain the person and can provide treatment as the committed person's condition requires. At the expiration of the 72-hour treatment period, the person detained is to be released, referred for further care and treatment on a voluntary basis, or certified for further involuntary treatment. Involuntary short-term certification for a period of three months may be accomplished under the procedure set forth in Colo.Rev.Stat. § 27–10–107 (1973) if the following conditions are met:

1. The professional staff of the facility providing 72-hour treatment has analyzed the person's condition and has found the person is mentally ill and, as a result of mental illness, a danger to others or to himself or gravely disabled;

2. The person has been advised of the availability of, but has not accepted, voluntary treatment. If reasonable grounds exist to believe that the person will not remain in a voluntary treatment program, his acceptance of voluntary treatment shall not preclude certification;

3. The facility which will provide short-term treatment has been designated or approved by the executive director.

The notice of certification must be signed by a professional person on the staff of the evaluation facility who participated in the evaluation. The certification must be filed with the court in the county in which the person resided or was physically present prior to being taken into custody within 48 hours, excluding Saturdays, Sundays, and court holidays, from the date of certification. Within 24 hours of certification, cop-

ies of the certification must be personally delivered to the committed person and mailed to the Colorado Department of Institutions. The committed person is asked to designate one other person whom he wishes to be informed regarding certification. If he is incapable of making such a designation at that time, he will be asked to designate such person as soon as he is able. The committed person is also given a written notice that a hearing on the short-term certification may be had before the court upon a written request. The statute provides for the "forthwith" appointment of counsel upon the filing of the certification with the court. A request can then be made for the court to review the involuntary commitment or treatment. A hearing is to be granted the committed person within 10 days of a review request.

Defendants Weld County Hospital and Richard Stenner initially challenge plaintiff's standing to raise the constitutionality of this statute because she did not take advantage of the review procedure provided by the statute. Defendants state that to challenge the constitutionality of a statute, one must have been affected by its application. *Carey v. Population Services Int.,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). While this principle of standing is a valid one, defendants' argument misses the point of plaintiff's claim. Plaintiff contends that *automatic* judicial review is constitutionally required before short-term certification for the reason that committed persons may not be fully capable of taking advantage of the elective review provision. Thus stated, plaintiff has alleged an injury-in-fact, and I find that she has standing to challenge the constitutionality of the statute at issue.

### Due Process

It is well settled that the state cannot constitutionally subject an individual to involuntary civil commitment and subject him to concomitant treatment without satisfying the procedural requirements imposed by due process. *Vitek v. Jones,* 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Addington v. Texas,* 441 U.S. 418, 427, 99 S.Ct. 1804, 1810, 60 L.Ed.2d 323 (1979); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Commitment to a mental institution results in a "massive curtailment of liberty," *Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972), and implicates fundamental rights. *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). Accordingly, governmental[1] decisions concerning commitment must be made consistent with the guarantees of procedural due process. The issue in dispute in this case is the content of the process that is constitutionally due in the context of short-term, involuntary civil commitment.

Plaintiff argues that due process requires an automatic state-initiated hearing in order to insure that the nature and duration of the commitment bear a reasonable relation to its purpose. Review, it is argued, insures that continued commitment and the treatment program applied to the committed person are appropriate. Plaintiff contends that patient-initiated review is not sufficient due to the disadvantages an institutionalized person must overcome to effectively exercise his rights.

Defendants acknowledge the unreasonableness of the situation that exists when a person, considered so mentally ill as to require detention, is the same person who must affirmatively exercise his constitutional rights. Defendants argue, however, that the Colorado statute addresses this "Catch 22" situation. They claim the statutory mandate that an attorney be appointed to represent the committed person upon filing of the certification papers avoids a

---

1. The defendants do not challenge, nor is there a real issue that, when physicians and hospitals confine persons pursuant to a mental commitment statute, they are exercising the power of detention delegated to them by the state. Because this power is one historically exercised by the government, the acts of the physicians and hospitals in this connection constitute state action. *See Kay v. Benson, M.D.,* 472 F.Supp. 850 (D.N.H.1979); *Ruffler v. Phelps Memorial Hospital,* 453 F.Supp. 1062 (S.D.N.Y.1978).

constitution impropriety. Defendants argue that this provision removes the onus for requesting judicial review from the patient's shoulders and places the responsibility on the attorney. They conclude that this procedure not only satisfies due process, but provides superior procedural safeguards to a statutory system that mandates a hearing in which the patient may not be represented.

Several cases cited by plaintiff address due process claims raised in connection with certification statutes of other states. *E.g., Doe v. Gallinot,* 486 F.Supp. 983 (C.D.Ca. 1979); *Suzuki v. Quisenberry,* 411 F.Supp. 1113 (D.Haw.1976); *Lessard v. Schmidt,* 349 F.Supp. 1078, (1972); *reaff'd,* 413 F.Supp. 1318 (E.D.Wis.1976). These cases are instructive, but their conclusions are not precisely on point because the statutes involved in these cases do not contain provisions for the forthwith appointment of counsel upon certification of the committed person.

 Due process is not a fixed concept, but one which varies according to the precise nature of the governmental function involved, as well as the private interests affected by the governmental action. *Tatum v. Mathews,* 541 F.2d 161 (6th Cir. 1976); *Old Dominion Dairy Products, Inc. v. Sec. of Defense,* 631 F.2d 953 (D.C.Cir.1980). Accordingly, the determination of what process is due must lie in consideration and application of several factors to the unique statute at issue. These factors are: first, the private interest that will be affected by the state action; second, the risk of erroneous deprivation; and, finally, the state's interest in the existing procedures, including the fiscal and administrative burdens that a substitute procedure would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Upon consideration of these factors, I am persuaded that the failure of Colo.Rev.Stat.

§ 27–10–107 (1973) to require a mandatory state-initiated hearing before the involuntary commitment of an individual for up to 90 days does not render the statute unconstitutional.

With respect to the first factor, there is no question that the private interest at stake is extremely weighty. By its nature, involuntary commitment results in a loss of liberty that is almost complete. Secondly, the risk of error in any commitment decision is also substantial. Subjective judgment is necessarily involved in an evaluation of mental illness and "there can be little responsible debate regarding 'the uncertainty of diagnosis in this field and the tentativeness of professional judgment.'" *O'Connor v. Donaldson, supra* 422 U.S. at 584, 95 S.Ct. at 2498 (Burger, C.J. concurring). Under the statute at issue, however, this inherent risk is greatly reduced by the appointment of counsel upon filing of the certification papers.[2] If, after meeting with his client, counsel is persuaded that there is no probable cause to detain his client, counsel can request, and the court must order, a judicial hearing within 10 days. Colo.Rev.Stat. § 27–10–107(6) (1973). The forthwith appointment of counsel also insures that the committed person is made aware of other avenues of relief available to him. The third factor to be weighed into this equation is the administrative and fiscal burdens that the state would have to bear in order to provide a mandatory hearing prior to every short-term certification. While a constitutionally required hearing or other proceeding may not be excused by reason of its cost, when a system is in place that adequately protects persons' rights to due process, it is appropriate to determine if the cost of additional safeguards outweigh the incremental benefit that they confer. In my judgment, the additional costs generated by a mandatory court-initiated hearing

---

**2.** Plaintiff makes a thoughtful argument in her reply brief about the burden this places on counsel, who may be unsure of the role he is to play and who is not trained for mental health work. However, it seems to me that an alternative system, providing for a hearing where the committed person is represented by coun-

sel, relies as much on the attorney's ability to function as a capable advocate. The concept that committed persons are entitled to counsel at all steps of a proceeding has long been acknowledged by the Tenth Circuit. *Heryford v. Parker,* 396 F.2d 393, 396 (10th Cir.1968).

prior to every short-term certification are not justified when the guarantee of counsel and the right to a hearing upon request provide adequate protection for the committed person's interests.

In sum, the statutory scheme in place meets the requirements of due process in connection with the short-term certification of persons found by a professional person to be a danger to themselves or others, or gravely disabled, as a result of mental illness. It bears noting, however, that a full adversary hearing is required before an individual may be involuntarily committed for a period in excess of 180 days. *See* Colo.Rev.Stat. §§ 27–10–108, 27–10–109 (1973).

### Equal Protection

Plaintiff's second attack on Colo.Rev. Stat. § 27–10–107 (1973) is that its operation deprives her of equal protection because a hearing is not required under that statute, yet is required under Colo.Rev.Stat. § 27–10–125 (1973) before a person can be denied the right to enter into a contract or drive a car. Plaintiff contends that this difference represents a violation of equal protection because there is no compelling explanation with respect to why a state-initiated hearing should be required in one context and not in the other.

The guaranty of equal protection is that all persons under like circumstances and conditions shall be treated alike, in the absence of a justification for treating them differently. *Hartford Steam Boiler Inspection & Ins. Co. v. Harrison,* 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1936). This guaranty is not invoked in the case before me because the statutes which plaintiff cites involve the application of different procedures to classes of persons who are not similarly situated.

Clearly, Colo.Rev.Stat. § 27–10–107 (1973) applies to persons who are found by a professional person after evaluation to be a danger to themselves or others, or gravely disabled, as a result of mental illness. In contrast, Colo.Rev.Stat. § 27–10–125 (1973) applies to any person believed by any interested person to be mentally ill, and a danger to themselves or others, gravely disabled, mentally retarded, developmentally disabled, or in some need of protection. Because the two statutes address different classes of individuals, § 27–10–107 is not properly challenged by an equal protection claim.[3] *See Walters v. City of St. Louis,* 347 U.S. 231, 237, 74 S.Ct. 505, 509–10, 98 L.Ed. 660 (1954); *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966).

### II.

Defendant Hospital's policy of restricting access by the patient or his counsel to treatment records until such access is approved by the patient's doctor is apparently based on Colo.Rev.Stat. § 25–1–801 (1973). That statute provides that patient records in the custody of a health care facility shall be made available to the patient or his representative for inspection, except those records pertaining to psychiatric or psychological problems or notes by a physician that, in the opinion of a licensed physician who practices psychiatry and is an independent third party, would have a significant psychological impact on the patient. The statute provides that a summary of records pertaining to a patient's history may be made available following termination of the treatment program. Plaintiff argues that this policy, taken together with the existing commitment scheme, present an almost insurmountable burden to the involuntarily confined patient who desires to challenge detention and be released and, thus, is violative of due process. Plaintiff further argues that the operation of § 25–1–801 conflicts with the rights provided patients un-

---

**3.** The case cited by plaintiff in support of her equal protection argument, *Benham v. Edwards,* 501 F.Supp. 1050 (N.D.Ga.1980), deals with unequal treatment of persons in substantially similar circumstances [mentally ill persons acquitted by reason of insanity and mentally ill persons certified by civil process] and, thus, is in accord with the reasoning underlying my conclusion.

**200**

der Colo.Rev.Stat. § 27–10–116(1)(a) (1973). The latter statute provides that any person or facility providing evaluation care or treatment shall make records available to any person receiving treatment under § 27–10–101, *et seq.,* his attorney, or his personal representative.

 Defendants Stenner and Hospital first attack this claim on two procedural grounds. They argue initially that plaintiff cannot question the constitutionality of § 25–1–801 because plaintiff did not assert such a claim in her complaint. Secondly, defendants argue that this issue is now moot. I find both of these arguments to be without merit. Plaintiff's seventh claim for relief states that the denial of access was violative of Colo.Rev.Stat. § 27–10–116(1)(a) (1973), and paragraph 42 of the complaint sets out facts alleging that plaintiff's counsel attempted to gain access to the files. Further, to the extent it can be determined that the application of § 25–1–801 operated to make it so difficult for plaintiff or her counsel to exercise the right to request judicial review, a violation of her constitutional rights may have occurred, and the issue cannot be said to be moot.

 In reviewing § 25–1–801, I find that it can be read consistently with § 27–10–116(1)(a) as a specific exception to a general policy of broad disclosure. I also find that § 25–1–801 is not unconstitutional on its face as it operates with the short-term commitment procedure discussed in the previous section. The remaining issue is whether the *application* of the Hospital's policy concerning the disclosure of patient records resulted in a violation of plaintiff's constitutional rights. The resolution of this issue revolves around facts that are currently contested. It is disputed whether defendant's policy actually interfered with plaintiff's ability to adequately prepare for her defense and whether it was the cause of plaintiff deciding not to take advantage of her statutory right to request judicial review of her commitment under Colo.Rev. Stat. § 27–10–107 (1973). Where material facts such as these are at issue, summary judgment is not properly granted. *Adickes*

*v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33 (10th Cir.1975).

Accordingly, it is

ORDERED that plaintiff's motion for partial summary judgment is denied.