**In the Matter of Ken CURNOW, Petitioner-Appellant,**

v.

**Ron YARBROUGH, Administrator, Windsor Health Care Center, Defendant-Appellee,**

**Theron G. Sills, M.D., and Yale L. Klugman, M.D., Defendants,**

**State of Colorado, Department of Institutions, Intervenor-Appellee.**

**No. 82SA203.**

Supreme Court of Colorado, En Banc.

Feb. 21, 1984.

Edward M. Caswall, Caswall & Pic, Greeley, for petitioner-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Margery T. Bornstein, Asst. Atty. Gen., Human Resources, Denver, for intervenor-appellee State of Colo.

Lee D. Morrison, Asst. Weld County Atty., Greeley, for defendant-appellee Yarbrough.

DUBOFSKY, Justice.

Petitioner Ken Curnow appeals a decision of the Weld County District Court dismissing his petition for habeas corpus and denying his request for declaratory relief. The district court concluded that the lack of a state-initiated probable cause hearing prior to involuntary short-term mental health commitment does not violate due process and equal protection under the United States Constitution. We agree with the district court that section 27–10–107, C.R.S., which requires the immediate appointment of counsel and a full adversary hearing within ten days of request, provides sufficient due process protection, and that the absence of a hearing requirement does not deny equal protection. Therefore, we affirm the judgment of the district court.

On May 14, 1981, after the petitioner had been evaluated for seventy-two hours at St.

Joseph's Hospital in Denver, Yale L. Klugman, a psychiatrist on the staff of the Adams County Mental Health Center, certified the petitioner to the Adams Manor Nursing Home for short-term mental health treatment. The certification specified that the petitioner was mentally ill and, as a result, a danger to himself or to others and that, although the petitioner accepted voluntary treatment, reasonable grounds existed to believe that he would not remain in a voluntary program; thus, his commitment was involuntary. The psychiatrist's affidavit accompanying the certification noted that the petitioner had a history of grand mal seizures. The psychiatrist observed that the petitioner was depressed and had a borderline personality disorder, resulting in his failure to take medication to prevent frequent seizures in uncontrolled settings.

The notice of certification was filed in the Adams County District Court on May 18, 1981, and personally served on the petitioner. The notice of certification included the following printed advisement:

"You are advised that the law gives you a right to a hearing upon your certification for short-term treatment before a court or jury. In addition to the right of review of this certification you have the right of review by the court of your treatment or that your treatment be on an out-patient basis. If you wish to take advantage of any of these rights, you should direct a written response to the District Court of Adams County, specifying the type of hearing. You may make this request any time that this certification for short-term treatment is in effect."

The same day the certification was filed, the Adams County District Court appointed counsel to represent the petitioner.

On June 22, 1981, a notice was filed in the Adams County District Court indicating that the petitioner had been transferred to the Windsor Health Care Center in Weld County under the care of Theron G. Sills, M.D. The certification was filed in Weld County District Court on June 23, 1981 and the court appointed Weld County counsel on June 25, 1981.

On July 7, 1981 the petitioner filed a petition for a writ of habeas corpus seeking release from involuntary hospitalization joined with a request for declaratory judgment that his involuntary commitment and continued confinement was in violation of due process and equal protection guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.[1] The petitioner did not request a hearing under section 27–10–107(6), C.R.S., claiming that only a mandatory state-initiated probable cause hearing would satisfy due process requirements.

The parties stipulated to the petitioner's release from Windsor Health Care Center on July 15, 1981.[2] The district court heard the petitioner's motion for declaratory judgment on October 14, 1981. The court took judicial notice of 163 mental health certifications filed in Weld County from July 1, 1975 through June 30, 1981. The court noted that in the 163 cases there had been 15 requests for hearings, and that of the seven hearings held, only one resulted in a vacated certification. The court heard testimony presented by the state that before the hearing in 1981, 933 short-term certifications had been filed in El Paso, Jefferson, Denver, Boulder, Adams, Arapahoe and Pueblo counties, and that hearings had been requested in approximately 12% of the certifications filed.

1. Named as respondents were Drs. Klugman and Sills, and Ron Yarbrough, the administrator of the Windsor Health Care Center. The petitioner notifed the state of his declaratory relief action alleging the unconstitutionality of a statute, and the attorney general, on behalf of the Colorado Department of Institutions, intervened. Section 13–51–115, C.R.S. and C.R.C.P. 57(j).

2. On September 24, 1981, the petitioner was rehospitalized for uncontrollable grand mal seizures. He was released at his request on October 7, 1981, and subsequently stayed at Windsor Health Care Center.

The district court determined that the petitioner's challenge was not moot, although the petitioner had been released from custody; that the petitioner had standing to challenge the lack of a mandatory hearing, although there was no indication that a mandatory hearing would have resulted in the petitioner's release; and that the petitioner's failure to request a hearing under the statute did not waive his opportunity to make a constitutional argument in the context of a habeas corpus proceeding. Relying on *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979), the court ruled that due process does not require automatic judicial review of short-term commitments because statutory safeguards sufficiently minimize the risk of erroneous short-term commitments, and, based upon the statistics provided by Weld County and the state, mandatory state-initiated hearings would not lessen whatever risk remained.[3]

## I.

■ At the outset, the respondents and the intervenor assert that the petitioner lacks standing to challenge the failure of section 27–10–107 to provide a mandatory probable cause hearing because the petitioner made no showing that such a hearing would have resulted in his release from certification. However, the petitioner challenged the statute as facially invalid for failing to provide automatic judicial review

on the basis that a committed person may not be capable of seeking elective review. The lack of an allegation that a mandatory probable cause hearing would have resulted in his release is not fatal to the claim he framed. The petitioner's complaint alleges an injury in fact to a legally protected interest, giving him standing to challenge the statute. *Cloverleaf Kennel Club v. Colorado Racing Commission*, 620 P.2d 1051 (Colo.1980); *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977).

## II.

### A.

A number of federal and state courts throughout the country have addressed state statutory protections for persons who are confined as mentally ill. Of the statutes addressed by these courts, no two are alike, and each decision has turned on the specific provisions of the challenged statute. Therefore, we begin our analysis with the Colorado statutory provisions governing civil commitment of the mentally ill.

Under section 27–10–105, C.R.S., when any person appears to be mentally ill and an imminent danger to others or to himself or gravely disabled, a peace officer, a physician, a psychologist, or a licensed social worker, upon probable cause, may place the person in a designated facility for seventy-two hour evaluation and treatment.[4] Persons detained for seventy-two hour

---

**3.** Recently, the United States District Court for the District of Colorado upheld an identical challenge to section 27–10–107. *Brown v. Jensen,* 572 F.Supp. 193 (D.Colo.1983). That court concluded that the statutory scheme meets the requirements of due process primarily because of the forthwith appointment of counsel and the right to a hearing upon request.

**4.** The General Assembly amended section 27–10–105(1)(a) in 1983 to also allow a psychiatric nurse to place a person in a designated or approved facility for seventy-two hour treatment and evaluation. Section 27–10–105(1)(a), C.R.S. (1983 Supp.); Colo.Sess.Laws 1983, ch. 341, 27–10–105(1)(a) at 1152.

Sections 27–10–105 and 27–10–106, C.R.S. allow any other person to initiate a seventy-two

hour evaluation and treatment by filing a petition with the court which may trigger a professional screening of the allegedly mentally ill person to determine if probable cause exists to believe that the person is mentally ill and a danger to others or to himself or gravely disabled. If the court determines that a person will not accept a seventy-two hour evaluation voluntarily, the court may order the person taken into custody and placed in a designated or approved facility for treatment and evaluation. Whenever a person is involuntarily admitted to a seventy-two hour treatment and evaluation facility, he shall be advised by the facility director of his right to retain and consult with an attorney and that if he is indigent, an attorney will be appointed by the court without cost to the patient.

evaluation and treatment must then be released, referred for further care and treatment on a voluntary basis, or certified for treatment under section 27–10–107.

A person may be certified under section 27–10–107 for not more than three months of short-term treatment if the professional staff of the facility providing seventy-two hour treatment and evaluation analyzes the person's condition and finds that he is mentally ill and, as a result of mental illness, a danger to others or to himself or gravely disabled. If a person is advised of the availability of, but does not accept, voluntary treatment, or, if he indicates his willingness to accept voluntary treatment, but reasonable grounds exist to believe that he will not remain in a voluntary treatment program, he may be certified for short-term treatment. The notice of certification is to be signed by a professional person who is on the staff of the evaluation facility and participated in the evaluation. The certification shall state facts sufficient to establish reasonable grounds to believe that the person is mentally ill and, as a result of mental illness, a danger to others or to himself or gravely disabled. The notice of certification shall be filed within forty-eight hours with the court in the county in which the respondent[5] resided or was physically present immediately prior to his being taken into custody. Within twenty-four hours of certification, copies of the certification shall be personally delivered to the respondent, and the respondent shall be asked to designate one other person whom he desires to be informed about his certifi-

cation. In addition to the copy of the certification, the respondent shall be given a written notice that a hearing upon his certification for short-term treatment may be had before the court or a jury upon written request by the respondent or his attorney. Whenever a certification is filed with the court, the court shall forthwith appoint an attorney to represent the respondent. Either the respondent or his attorney at any time may file a written request that the certification for short-term treatment be reviewed by the court, and the court shall hear the matter within ten days after the request.

Section 27–10–111, C.R.S. provides that a hearing shall be conducted in the same manner as other civil proceedings before the court. The burden of proof shall be upon the person or facility seeking to detain the respondent. The court or jury shall determine that the respondent is in need of care and treatment only if the court or jury finds by clear and convincing evidence that the respondent is mentally ill and, as a result of his mental illness, a danger to others or to himself or is gravely disabled. At the request of the respondent or his attorney, the court may appoint a professional person to examine the respondent and to testify at the hearing before the court on the results of his examination. At the conclusion of the hearing, the court may enter or confirm the certification for short-term treatment, discharge the respondent, or enter any other appropriate order.[6]

### B.

 The petitioner claims that the provision in section 27–10–107 for a court hear-

---

5. Once the certification process is initiated, the statutory terminology changes from "person" to "respondent." The petitioner in the case before us is a respondent in a certification proceeding.

6. Section 27–10–108, C.R.S. provides for one three-month extension of short-term treatment. Section 27–10–109 provides that whenever a respondent has received short-term treatment for five consecutive months under sections 27–10–107 and 27–10–108, the professional person in charge of the evaluation and treatment may file a petition with the court for long-term care if the professional staff of the facility providing

short-term treatment has analyzed the respondent's condition and found that the respondent is mentally ill and, as a result of mental illness, a danger to others or to himself or gravely disabled, and if the respondent has not accepted voluntary treatment or if reasonable grounds exist to believe that the respondent will not remain in a voluntary treatment program. Every petition for long-term care and treatment shall include a request for a hearing before the court prior to the expiration of six months from the date of original certification.

ing within ten days of his request does not provide sufficient due process protection against the curtailment of his liberty embodied in a short-term certification. Commitment to a mental institution requires due process protection because it constitutes a severe infringement on an individual's right to be free from governmental restraint. *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Parham v. J.R.*, 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *P.F. v. Walsh,* 648 P.2d 1067 (Colo.1982); *People v. Chavez*, 629 P.2d 1040 (Colo.1981); *People v. Taylor*, 618 P.2d 1127 (Colo.1980); *Goedecke v. State Dep't of Institutions*, 198 Colo. 407, 603 P.2d 123 (1979); *People v. Lane*, 196 Colo. 42, 581 P.2d 719 (1978). The petitioner has a substantial interest in not being confined unnecessarily for medical treatment, and the state's involvement in the commitment decision constitutes state action under the Fourteenth Amendment to the United States Constitution. *Parham v. J.R., supra.*

The petitioner's due process claim must recognize, however, that "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *People v. Chavez, supra.* In cases involving commitment to a mental institution where there is a protectable liberty interest, three factors must be balanced to determine the process due:

> " 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' *Mathews v. Eldridge*, 424 U.S. 319, 335 [96 S.Ct. 893, 903, 47 L.Ed.2d 18] (1976), quoted in *Smith v. Organization of Foster Families*, 431 U.S. 816, 848–849 [97 S.Ct. 2094, 2111–12, 53 L.Ed.2d 14] (1977)."

*Parham v. J.R.*, 442 U.S. at 599–600, 99 S.Ct. at 2502–2503; *see also P.F. v. Walsh, supra; People v. Chavez, supra.*

The first factor, the private interest in freedom from involuntary commitment and a portion of the third, the government's interest in protection of persons and society, are not questioned. No one disputes the severity of deprivation of one's liberty interest or the adverse social consequences to the individual engendered by commitment to a mental hospital, *Vitek v. Jones, supra; Addington v. Texas, supra; O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *People v. Chavez, supra*, nor does anyone contest the government's police power and *parens patriae* duty to protect society against dangerously disturbed individuals and to protect persons who are dangerous to themselves or gravely disabled. The determinative factors in this case, therefore, are the second—whether the risk of an erroneous deprivation of liberty will be lessened by requiring a mandatory probable cause hearing prior to a short-term certification and the probable value, if any, of the additional procedural safeguards—and a portion of the third factor, the fiscal and administrative burdens that the additional procedure would entail for the government.

The petitioner asserts that the Colorado short-term commitment statute's reliance on a patient-initiated hearing as a due process protection is inadequate because most patients will not ask for a hearing. Several courts and commentators have addressed the petitioner's point. The Connecticut Supreme Court, in overturning a statute placing the burden of requesting a hearing and

initiating review of recommitment proceedings on a patient, cited the practical difficulties of requiring a mental patient to overcome the effects of his isolated confinement, his closed environment, his possible incompetence and the debilitating effect of drugs or other treatments on his ability to make a decision which might amount to the waiver of his constitutional right to review of his status. *Fasulo v. Arafeh,* 173 Conn. 473, 378 A.2d 553 (1977). *See also Doe v. Gallinot,* 486 F.Supp. 983 (C.D. Cal.1979). Although all states provide an individual with an opportunity to be heard at some point in the commitment process, *Developments in the Law—Civil Commitments of the Mentally Ill,* 87 Harv.L.Rev. 1190, 1279, n. 97 (1974), fear of trauma from an adversary atmosphere has led states to excuse an individual's presence from a hearing when a court determines that attendance at a hearing would be detrimental to his health or to condition a hearing upon the request of the individual. *Id.* at 1273, 1282, 1291. *See also* Note, *Due Process and the Development of "Criminal" Safeguards in Civil Commitment Adjudications,* 42 Fordham L.Rev. 611 (1974).

Many courts, without addressing a patient's difficulties in initiating a hearing, have required a state-initiated probable cause hearing[7] within a relatively short time after the patient's commitment. *Luna v. Van Zandt,* 554 F.Supp. 68 (S.D. Tex.1982); *Doe v. Gallinot, supra; French v. Blackburn,* 428 F.Supp. 1351 (M.D.N.C. 1977), *aff'd,* 443 U.S. 901, 99 S.Ct. 3091, 61 L.Ed.2d 869 (1979); *Doremus v. Farrell,* 407 F.Supp. 509 (D.Neb.1975); *Lynch v. Baxley,* 386 F.Supp. 378 (M.D.Ala.1974); *Lessard v. Schmidt,* 349 F.Supp. 1078 (E.D. Wis.1972), *vacated and remanded,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661

(1974), *on remand,* 379 F.Supp. 1376 (E.D. Wis.1974), *vacated and remanded,* 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), *reaffirmed,* 413 F.Supp. 1318 (E.D. Wis.1976); *Application of True,* 103 Idaho 151, 645 P.2d 891 (1982); *State ex rel. Doe v. Madonna,* 295 N.W.2d 356 (Minn.1980); *Fasulo v. Arafeh, supra; see also Developments in the Law,* 87 Harv.L.Rev. 1190.[8]

Other courts have concluded that the risk of an erroneous deprivation of liberty is satisfied by procedural protections short of a state-initiated probable cause hearing. In *Parham v. J.R., supra,* the United States Supreme Court upheld a Georgia statute which allowed commitment of children to mental hospitals without notice and an adversary-type hearing before an impartial tribunal. The court concluded, "[W]e are satisfied that an independent medical decisionmaking process, which includes ... [a] thorough psychiatric investigation..., followed by an additional periodic review of a child's condition, will protect children who should not be admitted; we do not believe the risks of error in that process would be significantly reduced by a more formal, judicial-type hearing." *Id.* 442 U.S. at 613, 99 S.Ct. at 2509.

Similarly, a federal appellate court recently upheld the New York civil commitment law which allows hospitalization for sixty days without a judicial hearing unless a hearing is requested by the patient. *Project Release v. Prevost,* 722 F.2d 960 (2nd Cir.1983). The court described the statutory scheme as reflecting a careful balance between the rights of the individual and the interests of society, and concluded that, given the layers of professional review, notice to relatives and others designated by the patient, and the availability of a judicial hearing within five days of de-

---

7. "Probable cause" in this context has been defined as the determination "whether sufficient reason exists to believe that a patient should be committed to a mental institution; for instance, whether reason exists to believe that the patient is probably dangerous to himself or others."

*State ex rel. Doe v. Madonna,* 295 N.W.2d 356, 364 n. 13 (Minn.1980).

8. The statutes involved in these cases provided fewer procedural protections for persons subject to commitment than does section 27–10–107.

mand by the patient, relative, or friend, as well as habeas corpus relief, the statute met procedural due process minima. *Id.; see also Brown v. Jensen,* 572 F.Supp. 193 (D.Colo.1983); *Logan v. Arafeh,* 346 F.Supp. 1265 (D.Conn.1972), *aff'd, sub. nom. Briggs v. Arafeh,* 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973).

The district court in the instant case correctly applied the due process balancing test. Although section 27–10–107 does not provide for a mandatory probable cause hearing, it does contain a number of compensating factors to protect against an erroneous commitment. These include a professional decision to initiate the seventy-two hour evaluation; professional medical evaluation at the time of involuntary short-term commitment; certification signed by a professional medical evaluator and filed with the court; notice concerning certification within twenty-four hours to the person committed; notice concerning certification to one other person the respondent designates; forthwith appointment of an attorney to represent the respondent; a hearing within ten days if requested by the respondent or his attorney; the burden of proof by clear and convincing evidence upon the person or facility seeking to detain the respondent; and optional court appointment of an independent professional person to examine the respondent. The statistics relied upon by the district court support the petitioner's position that few persons involuntarily committed to short-term care challenge that commitment by requesting a hearing and the state's concern that mandatory probable cause hearings would multiply by ten times the number of hearings now held under section 27–10–107. Although the state's concern about increased administrative and fiscal burdens is not determinative, we share the observation of the United States Supreme Court in *Parham v. J.R.,* 442 U.S. at 606, 99 S.Ct. at 2506; "the utilization of the time of psychiatrists, psychologists, and other behavioral specialists in preparing for and participating in hearings rather than performing the task for which their special training has fitted them .... [is] ... of little help to patients."

A legislative act is presumed constitutional, and the burden is upon the party attacking it to establish its unconstitutionality beyond a reasonable doubt. *Dawson v. Public Employees' Retirement Association,* 664 P.2d 702 (Colo.1983); *People v. Alexander,* 663 P.2d 1024 (Colo.1983); *Bollier v. People,* 635 P.2d 543 (Colo.1981); *People in the interest of C.M.,* 630 P.2d 593 (Colo.1981). We have deferred in the past to the General Assembly's determination that a mixture of medical and legal judgments is sufficient to protect one who is mentally ill from the risk of an erroneous deprivation of liberty. *People v. Taylor, supra.* We conclude that section 27–10–107, without the requirement of a mandatory probable cause hearing, is facially constitutional.

III.

The petitioner also claims that he is denied equal protection by the failure of section 27–10–107 to require a mandatory probable cause hearing before the imposition of short-term commitment because legal deprivations imposed upon the mentally ill under section 27–10–125, C.R.S. can only be enforced after a mandatory judicial hearing. Section 27–10–125 allows any interested person to commence an action to impose a legal disability or the deprivation of a legal right, including contractual rights and rights with regard to the operation of motor vehicles, against a person who is mentally ill and a danger to himself or others, gravely disabled, mentally retarded, developmentally disabled or insane. Pending a hearing under section 27–10–125, the court may issue an order temporarily imposing a disability or depriving the respondent of a legal right for a period of not more than ten days in conformity with the standards for issuance of ex parte temporary restraining orders in civil cases.

The equal protection doctrine does not require that " 'all persons be dealt

with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.' *Baxstrom v. Herold,* 383 U.S. 107 [86 S.Ct. 760, 15 L.Ed.2d 620] (1966)." *People v. Chavez, supra.* Except for cases involving fundamental rights or suspect classifications, equal protection requires only that the distinctions made be rationally related to legitimate governmental purposes. *People v. Velasquez,* 666 P.2d 567 (Colo.1983); *Dawson v. Public Employees' Retirement Association,* 664 P.2d 702 (Colo.1983). No suspect classification is involved here, *People v. Chavez, supra,* but commitment to a mental institution constitutes a significant deprivation of liberty. *Vitek v. Jones, supra; Addington v. Texas, supra; People v. Chavez, supra.* Once it has been determined that a civil commitment scheme does not violate due process, however, distinctions made by civil commitment statutes will not be invalidated on equal protection grounds unless they lack a rational basis. *People v. Chavez, supra. Cf. United States v. Jackson,* 553 F.2d 109 (D.C.Cir.1976) (upholding a statute distinguishing mentally retarded individuals who have been acquitted of a crime by reason of insanity and those who have not, under a rational basis test).[9] Here, although a person who is involuntarily certified and a person who may be deprived of a legal right are both mentally ill, the state is not seeking to impose the same limitations upon them. Thus, there is a rational basis for distinguishing between sections 27–10–107 and 27–10–125; the sections address parties who are not similarly situated. *Brown v. Jensen, supra; French v. Blackburn, supra.*

Moreover, the mental commitment statute requires the involvement of professional medical persons who make several probable cause determinations in the course of the commitment proceeding. By contrast, any interested person, without an initial determination of another's mental illness by a professional medical person, may request that the other person be deprived of a right. Equal protection analysis does not compel identical procedures when parties are not similarly situated. A statute is presumed constitutional, and the burden is upon the party attacking it to establish its unconstitutionality beyond a reasonable doubt. *Dawson v. Public Employees' Retirement Association, supra; People v. Alexander, supra.* The petitioner here has not overcome the presumption that the statute is constitutional. We decline to substitute our judgment for that of the General Assembly. *Smith v. Charnes,* 649 P.2d 1089 (Colo.1982). The lack of a mandatory probable cause hearing under section 27–10–107 does not violate the equal protection clause of the United States Constitution.

Judgment affirmed.

**9.** *United States v. Jackson* relied upon the United States Supreme Court's decisions in *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) (invalidating a criminal commitment statute with no "reasonable justification," on equal protection grounds), and *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966) (invalidating a commitment statute lacking "some relevance to the purpose for which the classification is made"). *See also Jones v. United States,* — U.S. —, 103 S.Ct. 3043, 3048 n. 10, 77 L.Ed.2d 694 (1983) (applying a rational basis test to a statute distinguishing between civil commitment and commitment of insanity acquittees).