The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 21, 2019

## 2019COA24

**No. 17CA1623, *In the Interest of Ray v. People* — Health
and Welfare — Care and Treatment of Persons with Mental
Health Disorders — Certification for Short-term Treatment;
Probate — National Instant Criminal Background Check System**

A division of the court of appeals concludes that a certification

for involuntary short-term mental health treatment entered by a

professional person under section 27-65-107, C.R.S. 2018, is not

the equivalent of a court order under section 13-9-123(1)(c), C.R.S.

2018, that authorizes reporting to the National Instant Criminal

Background Check System.  Accordingly, the division reverses the

order of the probate court and directs the probate court, State

Court Administrator, and Colorado Bureau of Investigation, as

applicable, to take reasonable steps to cause any record of Ray's

certification submitted by them under section 13-9-123(1)(c) to be

rescinded.

COLORADO COURT OF APPEALS     **2019COA24**

Court of Appeals No. 17CA1623
City and County of Denver Probate Court No. 15MH110
Honorable Elizabeth D. Leith, Judge

In the Interest of Joshua J. Ray, Sr.,

Petitioner-Appellant,

v.

People of the State of Colorado, Colorado Bureau of Investigation for the State of Colorado, and Office of State Court Administrator for the State of Colorado,

Respondents-Appellees.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE BERGER
Bernard, C.J., and Freyre, J., concur

Announced February 21, 2019

Glatstein & O'Brien, LLP, Jonathan B. Culwell, Denver, Colorado, for Petitioner-Appellant

Kristin M. Bronson, City Attorney, Michael J. Stafford, Assistant City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Respondent-Appellee People of the State of Colorado

Philip J. Weiser, Attorney General, Emily B. Buckley, Assistant Attorney General, John A. Vanlandschoot, Assistant Attorney General, Denver, Colorado, for Respondents-Appellees Colorado Bureau of Investigation for the State of Colorado and Office of State Court Administrator for the State of Colorado

## I.     Introduction and Summary

¶ 1     A physician certified Joshua J. Ray, Sr., for involuntary short-term mental health treatment under section 27-65-107, C.R.S. 2018.  That certification caused Colorado officials to report Ray to the National Instant Criminal Background Check System (NICS) as a person subject to federal firearm prohibitions.  Ray argues that because he was involuntarily certified by a physician, rather than a court, Colorado officials should not have reported his certification to the NICS.

¶ 2     The interplay between Colorado statutes and enforcement of the federal Brady Handgun Violence Prevention Act is complex.  *See* 18 U.S.C. § 922 (2018); §§ 13-9-123, -124, C.R.S. 2018; § 24-33.5-424, C.R.S. 2018.  The Brady Act prohibits certain categories of persons from possessing a firearm, including those who have been "committed to a mental institution."  18 U.S.C. § 922(g)(4).  To effectuate these prohibitions, the Brady Act created a federally administered database of persons barred from possessing a firearm, the NICS.  34 U.S.C. § 40901 (2018).

¶ 3     Colorado law requires certain persons and entities to make NICS reports — the State Court Administrator (SCA) must report to

the Colorado Bureau of Investigation (CBI) the "name of each person with respect to whom *the court has entered an order* for involuntary certification for short-term treatment of a mental health disorder pursuant to section 27-65-107" so that those persons are listed in the NICS. § 13-9-123(1)(c) (emphasis added).[1]

¶ 4    While the statutory scheme is complex, the only issue properly before us is simple: When a professional person certifies someone for involuntary short-term mental health treatment under section 27-65-107, is that certification the equivalent of a court order within the meaning of section 13-9-123(1)(c), thus requiring reporting to the NICS?

¶ 5    Our answer, which is "no," is equally simple. The plain meaning of the term court order simply cannot encompass a certification by a professional person.

¶ 6    Accordingly, we reverse the order the of the probate court and direct the probate court, SCA, and CBI, as applicable, to take

---

[1] Section 13-9-123, C.R.S. 2018, prescribes the reporting requirement for the Denver Probate Court. The analogous reporting requirement for district courts appears at section 13-5-142, C.R.S. 2018.

reasonable steps to cause any record of Ray's certification submitted by them under section 13-9-123(1)(c) to be rescinded.

## II. Relevant Background and Procedural History

¶ 7      Ray voluntarily sought mental health treatment from a Denver hospital. After his admission, a physician certified him for involuntary mental health treatment under section 27-65-107, finding that Ray was a danger to himself or others and also finding that, absent such a certification, Ray would discontinue mental health treatment. After that certification was filed with the Denver Probate Court, as required by section 27-65-107(2), either the court clerk or the SCA notified the CBI of the certification and caused Ray's name to be included in the NICS.[2]

¶ 8      The certifying physician terminated the mental health certification just days after it was entered, and Ray was discharged

_____

[2] Despite the joinder of the SCA and the CBI as defendants in this case, what exact process is used to transmit information from the Denver Probate Court to the NICS remains unclear. Although section 13-9-123 requires the SCA to report names to the CBI for inclusion in the NICS, in this case whether the Denver Probate Court clerk, SCA, or CBI ultimately submitted the information to the NICS is indeterminable. Regardless, these details are not material to our disposition.

from the hospital. Ray alleges that, after his discharge, he contacted the federal government regarding his NICS status, and was informed that he was listed in the NICS based on the mental health certification.[3]

¶ 9     Ray petitioned the probate court for removal from the NICS, arguing that because he had never been certified *by a court* to a mental health institution, his name had been improperly submitted to the NICS. A Denver probate court magistrate denied the petition. Ray sought review of the magistrate's order under C.R.M. 7(a). The Denver probate court judge concluded that Ray's certification had been properly reported to the NICS.

¶ 10     Ray appealed to this court, and this division vacated both the magistrate's and probate court's orders and remanded to the probate court, concluding that the parties necessary for a just determination were not present. Ray then joined the SCA, who is statutorily responsible for reporting persons to the CBI for listing in

---

[3] The probate court decided this case under C.R.C.P. 12(b)(5), so no evidence was taken and no findings of fact were made. Like the probate court, we are required to assume the truth of Ray's allegations of material fact. *See Sch. Dist. No. 1 v. Masters*, 2018 CO 18, ¶ 13.

the NICS, and the CBI, which is tasked with running background checks against the NICS before Colorado firearm purchases and denying firearm transfers that would violate certain provisions of the Brady Act. *See* §§ 13-9-123, 24-33.5-424(3)(a).

¶ 11 After joinder of those parties, the probate court again rejected Ray's petition, concluding on the SCA's and CBI's motions to dismiss for failure to state a claim that the certification by Ray's physician was the equivalent of a court order, which triggered NICS reporting under section 13-9-123.

### III. Standard of Review and Principles of Statutory Construction

¶ 12 We review de novo a trial court's ruling on a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim upon which relief can be granted. *Scott v. Scott*, 2018 COA 25, ¶ 17. "[T]o survive a motion to dismiss for failure to state a claim, a plaintiff must allege a plausible claim for relief." *N.M. v. Trujillo*, 2017 CO 79, ¶ 20 (citing *Warne v. Hall*, 2016 CO 50, ¶ 9).

¶ 13 The meaning of a statute is a question of law. *People v. Martinez*, 70 P.3d 474, 477 (Colo. 2003). Accordingly, we review de novo all matters of statutory interpretation. *Cowen v. People*, 2018 CO 96, ¶ 11. When interpreting a statute, our primary purpose is

to give effect to the General Assembly's intent. *Id.* at ¶ 12. As the supreme court has instructed, "[i]f the statutory language is clear and unambiguous, we apply it as written — venturing no further." *Estate of Brookoff v. Clark*, 2018 CO 80, ¶ 5. We may not add or subtract words from a statute. *Turbyne v. People*, 151 P.3d 563, 567 (Colo. 2007).

## IV. A Certification by a Physician Is Not an Order Entered by a Court

¶ 14 Before addressing whether a certification by a "professional person" under section 27-65-107 is the equivalent of a court order within the meaning of section 13-9-123(1)(c), it is useful to explain Colorado's statutory procedures authorizing involuntary short-term treatment.

¶ 15 Under prescribed conditions, section 27-65-107(2) authorizes a "professional person" to certify someone for not more than three months of short-term mental health treatment. "Professional persons" include Colorado-licensed physicians and Colorado-certified psychologists. § 27-65-102(17), C.R.S. 2018.

¶ 16 The certification has grave consequences for the liberty interests of the respondent: "[u]pon certification of the respondent,

6

the facility designated for short-term treatment shall have custody of the respondent." § 27-65-107(4).

¶ 17 The certification is effective immediately, without any court action or order. The certification must be filed with the appropriate court within forty-eight hours, not including weekends and court holidays. § 27-65-107(2). The court must appoint counsel for the respondent. § 27-65-107(5). The respondent, or his or her attorney, may, at any time, file a written request that the short-term certification be reviewed by the court or that the treatment be on an outpatient basis. § 27-65-107(6). If such a request is made, the court must hold a hearing within ten days after the request. *Id.* At the conclusion of such a hearing, the court may "enter or confirm the certification for short-term treatment, discharge the respondent, or enter any other appropriate order . . . ." *Id.*

¶ 18 The supreme court upheld the constitutionality of this statutory scheme over Due Process Clause and Equal Protection Clause attacks in *Curnow v. Yarbrough,* 676 P.2d 1177 (Colo. 1984). *See also Brown v. Jensen,* 572 F. Supp. 193 (D. Colo. 1983).

¶ 19     We now turn to whether a certification by a professional person under section 27-65-107 is a court order within the meaning of section 13-9-123(1)(c).

¶ 20     The term court order has a well-known, recognized meaning: it is an order entered by a court.  A "court" is a "tribunal constituted to administer justice," especially "a governmental body consisting of one or more judges who sit to adjudicate disputes."  Black's Law Dictionary 430 (10th ed. 2014).  An "order" is a "written direction or command delivered by a government official," especially "a court or judge."  *Id.* at 1270.

¶ 21     While a certification may in some instances be an order, a physician is not a court.  Thus, whatever may be said about the certification made by the physician in this case, in no way does it meet the plain definition of a court order.

¶ 22     Essentially, the SCA and the CBI ask us to redefine "court order" for the purposes of section 13-9-123(1)(c), because such a revised definition best serves the statutory framework implementing and enforcing federal firearms prohibitions.  But that is not a

proper function of the courts.[4]  Nor can we do so in the guise of "construing" the statute.  There is nothing to construe.  The express language of the statute requires reporting only when a *court order* commits a person to a mental institution.  § 13-9-123(1)(c).

¶ 23    Given the interplay between the Colorado reporting requirement and the substantive disqualifications imposed by federal law, we acknowledge that it is certainly possible, even likely, that the General Assembly intended that certifications by a non-judicial authority would be reported to the NICS.  Because the majority of certifications for short-term treatment are not accomplished by court orders, we are mindful that most short-term certifications will not, under our holding, be reported to the NICS, unless the General Assembly amends section 13-9-123(1)(c).  But

---

[4] Colorado appellate courts have not expressly addressed what is commonly known as the "scrivener's error doctrine" in the context of statutory construction.  Some courts outside of Colorado have applied the scrivener's error doctrine to correct mistakes in statutes when it is absolutely clear the legislature meant something other than what appears in the statute.  *See* Ryan D. Doerfler, *The Scrivener's Error*, 110 Nw. U. L. Rev. 811, 812-14 (2016) (collecting cases).  Given the long-accepted, plain meaning of the phrase court order, it is not absolutely clear to us that the General Assembly intended to include statutory certifications within the definition of a court order.  Therefore, we decline to apply the scrivener's error doctrine, even assuming it is part of Colorado law.

adherence to the doctrine of separation of powers, embedded into the Colorado Constitution, has consequences. *See* Colo. Const. art. III.

¶ 24    Because the certification in this case was not a court order, we reverse the probate court's dismissal of Ray's claim. With respect to any records related to Ray's January 30, 2015, certification submitted by the probate court under section 13-9-123(1)(c), the probate court is directed, under section 13-9-123(4), to "[u]pdate, correct, modify, or remove the record from any database that the federal or state government maintains and makes available to the [NICS], consistent with the rules pertaining to the database" and "[n]otify the attorney general that such basis does not apply or no longer applies." The SCA and CBI are directed to take consistent action with respect to any records related to Ray's January 30, 2015, certification by taking reasonable steps to cause any such record previously reported by them under section 13-9-123(1)(c) with respect to Ray to be rescinded.[5]

---

[5] We have no jurisdiction over the federal officers who administer the NICS. Therefore, we cannot and do not order them to do anything.

## V. The Question of Whether Ray Remains Subject to Prohibitions from Purchasing a Firearm Is Not Before Us

¶ 25     Ray's second supplemental opening brief requests that we order an unspecified party or parties to "submit documentation nullifying the legal prohibition." From this language, it appears that Ray is asking us to determine that the Brady Act's prohibitions are not applicable to him and issue an order to that effect. But that question is not properly before us.[6]

¶ 26     Thus, it is critical to understand what we do not decide. We do not decide that Ray is eligible under federal law to possess a firearm.

---

[6] A Colorado state court may grant relief from federal Brady Act prohibitions under section 13-9-124, C.R.S. 2018, as authorized under the NICS Improvement Amendments Act of 2007, 34 U.S.C. § 40915 (2018). We acknowledge that the language in section 13-9-124(2)(a)(III), like that in section 13-9-123(1)(c), applies only to persons for whom the "court has entered an order." Nevertheless, Ray did not bring this action under section 13-9-124, and the probate court's order was not entered under section 13-9-124. The probate court did not, and could not, based on the pleadings and record before it, make the findings required under section 13-9-124 and section 40915(a)(1) of the NICS Improvement Amendments Act to remove the federal disqualification.

¶ 27 The federal disqualification, which carries serious criminal penalties, is far broader than the reporting requirement we have addressed in this opinion. *See* 18 U.S.C. § 922(g)(4).

¶ 28 Under federal law, a person who has been "committed to a mental institution" may not possess a firearm. *Id.* Federal regulations, which have the force of law, define a commitment to a mental institution as "formal commitment . . . by a court, board, commission, *or other lawful authority*." 27 C.F.R. § 478.11 (2018) (emphasis added).

¶ 29 If Ray were to acquire a firearm following the issuance of this opinion, this opinion would *in no way* shield him from prosecution under federal or state firearm prohibitions. This opinion applies *only* to the reporting requirement under section 13-9-123(1)(c).

## VI.    Conclusion

¶ 30 The probate court's order is reversed, and the case is remanded for the probate court and the parties to take the actions directed in Part IV of this opinion.

CHIEF JUDGE BERNARD and JUDGE FREYRE concur.